James J. Lawler, Plaintiff-Appellee, v. Pepper Construction Company, a Corporation, Defendant-Appellant.

Gen. No. 48,368.

First District, Third Division.

November 15, 1961.

Erwin Wright, of Chicago (Charles D. Snewind, of counsel), for appellant.

Philip H. Corboy, John J. Treacy, and John D. Hayes, of Chicago, for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

This is an action for personal injuries arising out of the Illinois Structural Work Act, Ill Rev Stats, c 48, §§ 60–69 (1949). The verdict was for the plaintiff and the defendant has appealed on the grounds that it did not have charge of the work within the meaning of the statute, that there was no evidence of a wilful violation as required by the statute, that the verdict was against the manifest weight of the evidence, and that the court erred in admitting evidence and in refusing instructions.

The defendant, Pepper Construction Company, was a subcontractor engaged by the American Glass Company to assist it in remodeling fifteen store windows on the State Street side of the Marshall Field & Company store in Chicago. The pattern of operation was for American to remove the glass from the windows then Pepper would take out the old sashes and molding from around the windows and the transoms above the windows, and do other preparatory work. After this was done metal workers employed by American would install new sashes and other workmen would complete the job. James Lawler, the plaintiff, was one of these metal workers.

As part of its contract Pepper erected public and weather-protection barricades, four feet out on the sidewalk, around the open windows. There were two of these so that two windows could be under repair at the same time and the flow of work could be continuous. In order to do its own work, which took three days for each window, Pepper constructed a wooden scaffold within one barricade. The scaffold was dismantled as Pepper's work on each window was completed and rebuilt within the second barricade as a new window was started. It was made of 2 x 4's and 2 x 6's, with a platform on top about 7 feet high consisting of 2 x 12 planks, 14 feet long. The scaffold was held together by nails and was supported on each side by a 1 x 4 brace which was nailed into the barricade.

At the end of Friday afternoon, September 29, 1950, Pepper finished a window and notified American that the sheet metal workers could proceed. The Pepper foreman testified that he instructed his carpenters to disassemble the scaffold and place the lumber inside the store window. He said he saw this done before he left the job. About 8 a. m., Saturday morning, which was the first day he was assigned to the Marshall Field project, Lawler and two other metal workers entered the barricade. They testified that the scaffold was in place so they used it as two of them had done —in the presence of Pepper's foreman and employees —on other occasions. For three hours they frequently climbed on and off the scaffold which was made of new lumber and which seemed to them steady and secure. About 11 a. m., as they were on the platform drilling holes in an "I" beam, the scaffold suddenly swayed and then sagged at one end. The two workers who were at the ends grasped the uprights and did not fall, but Lawler, who was in the middle fell backwards as the platform planks slipped off. He landed on the sidewalk and fractured his right heel and his left ankle. Because of his pain he did not notice what

191

caused the scaffold to give way. One of the workers said he saw a brace broken loose from the barricade; the other worker had died before the trial.

Pepper's foreman denied seeing employees of American Glass use the scaffold; he said they had no permission to do so and that they had their own jack-ladders and planks. He testified he did not know they worked on Saturdays, but he knew they did work overtime and that there was a deadline for completing the job because of the approaching Christmas season. Although he said the scaffold was taken down before he left for home on Friday afternoon, he also said that when he returned to Field's on Monday morning it was assembled and that one of the braces which attached to the barricade was hanging loose.

The first ground urged for reversal is that Pepper did not have charge of the work within the meaning of the statute. The pertinent portions of the Structural Work Act are as follows:

> ". . . all scaffolds . . . erected or constructed by any . . . corporation . . . for the use in the . . . alteration . . . of any . . . building . . . shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon. . . .

> "Any owner, contractor, sub-contractor, foreman or other person, having charge of the . . . alteration . . . of any building . . . within the provisions of this act, shall comply with all the terms thereof. . . .

> "For any injury to person . . . occasioned by any wilful violations of this act, or wilful failure to

192

comply with any of its provisions, a right of action shall accrue to the party injured. . . ."

Because it was not primarily in charge of the alteration, had completed its duties on the particular window involved and had no representative present at the time the accident occurred, and because its own evidence showed that it had constructed the scaffold for its own employees, that no one else had permission to use it and that it was taken down the day before Lawler fell, the defendant seeks to come within the interpretation given the statute in Gannon v. C., M., St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785. In the Gannon case it was held that a property owner, who exercised no control over the scaffolds and ladders used in construction work on its premises and no control over the manner in which the work was done, could not be deemed to have charge of the work under the terms of the Act. However, the facts here differ widely from those in the Gannon case not only in that Pepper was a subcontractor and the defendant in Gannon was an owner, but because of Pepper's participation in the work being done and its responsibility for and its control over the scaffold.

■ From the evidence the jury could have found that employees of American had used the Pepper scaffold during the course of remodeling the windows, that Pepper had left its scaffold up on Friday knowing that the metal workers would be following it on the job and that this was equivalent to an invitation to them to continue using it. Pepper was a subcontractor participating in a phase of the alteration which required a scaffold; it was the party who built the scaffold and was responsible for its safe construction and use. Under these facts Pepper had charge of the alteration within the meaning and the provisions of the Act.

193

■ ■ The second point made by the defendant is that there was no evidence of a wilful violation as required by the statute. The jury answered affirmatively a special interrogatory submitted to them at the defendant's request: "Was there a wilful violation of the Scaffold Act by the defendant?" The words "wilful violations" in the Act have been construed to be synonymous with the words "knowing violations." Gannon v. C., M., St. P. & P. Ry. Co., supra; Kennerly v. Shell Oil Co., 13 Ill2d 431, 150 NE2d 134. From the evidence the jury could have concluded that dangerous defects existed in the scaffold which were either known to the defendant or, because it built and used the scaffold, could have been known through the exercise of reasonable care: (1) There was a dispute whether the planks were secured to the platform. Pepper's foreman said they were; the iron workers said they were not. (2) The foreman said that "as a rule" he never used more than one nail to hold the brace to the barricade, but Pepper's construction superintendent, who supervised the Field project, said it was not accepted practice to use one nail, that he would use two or three. The barricade braces were an important part of the scaffold; their purpose was to steady the structure generally and to give it rigidity, especially against pressure to the rear. Such backward pressure was applied when the iron workers drilled into the iron beam in front of them. The dispute over the planks and the part they played in the accident; the problem of the brace and whether one nail was sufficient to secure it, were for the jury to decide in determining if the scaffold was "constructed in a safe, suitable and proper manner . . . as to give proper and adequate protection to . . . persons employed or engaged thereon. . . ." There is a reasonable basis in the evidence for the jury's special finding of fact and, under the record in this case, the defendant is bound by that finding.

194

■ The special interrogatory settles the third point made by the defendant, that the verdict was against the manifest weight of the evidence. No motion was made to set the special interrogatory aside and no objection was made to it in the post-trial motion. It is the rule that a special finding of fact by a jury conclusively binds the party submitting the interrogatory, unless it makes a specific objection thereto or in some other way raises an issue as to its propriety. Taake v. Eichhorst, 344 Ill 508, 176 NE 765; Westlund v. Kewanee Public Service Co., 11 Ill App2d 10, 136 NE 2d 263; 35 ILP Trial, sec 338.

■ The post-trial motion was also deficient in another respect; it did not specify the evidentiary point which the defendant now advances as its fourth reason for reversal. The only objection appertaining to this point in the motion was this: "The court erred in admitting incompetent, irrelevant and immaterial evidence over the objections of the defendant." This was a general objection and it failed to comply with the statutory requirement that all grounds for a new trial be particularly specified in the post-trial motion. Ill Rev Stats, c 110, § 68.1 (1959). A party cannot raise on appeal alleged errors concerning the admission or rejection of evidence unless these errors were asserted with particularity in the post-trial motion. Perez v. Baltimore & O. R. Co., 24 Ill App2d 204, 164 NE2d 209.

■ Three refused instructions comprise the last assignment of error. The first of these would have informed the jury that in weighing the testimony of the plaintiff they could take into consideration the fact that he was the plaintiff and was interested in the suit. This was a proper instruction but the refusal to give it was not error. There were two given instructions, one submitted by the defendant and one by the plaintiff, which said that a test to be applied

195

to all witnesses was their interest in the result of the suit. The second refused instruction said if the scaffold was erected or constructed by someone other than the defendant and without its knowledge or consent, the defendant had to be found not guilty. There was no evidence that anyone other than the defendant had any part in erecting or constructing the scaffold. If the instruction was meant to refer to the possible erection of the scaffold by someone else between Friday afternoon, when the defendant said it was taken down, and Saturday morning, when the metal workers found it in place, it should have been limited to that interval. The third instruction was to the effect that if the plaintiff was injured as the result of an accident which occurred without the fault of either the plaintiff or the defendant the latter should be found not guilty. This instruction was also improper. There was evidence from which the structural weakness of the scaffold and the knowledgeable fault of the defendant could be deduced, and the fault of the plaintiff was neither an issue nor a factor in the case. The second and third refused instructions were defective for another reason. They were peremptory, but they lacked elements essential in correct peremptory instructions.

The judgment is affirmed.

Affirmed.

McCORMICK, P. J. and SCHWARTZ, J., concur.