Louis Yankey, Plaintiff-Appellee, v. Oscar Bohlin &
Son, Inc., a Corporation, Defendant-Appellant,
Northwestern Heating & Plumbing Company, a
Corporation, and Northwestern Excavators, a Di-
vision of Northwestern Heating and Plumbing
Company, a Corporation, Defendants-Appellees.

Gen. No. 48,185.

First District, First Division.

October 29, 1962.

458

Royce G. Rowe of Jacobs & McKenna, of Chicago (Joseph B. Lederleitner, of counsel), for defendant-appellant.

Joseph Barbera, of Chicago, for Louis Yankey, plaintiff-appellee and cross-appellant.

Albert M. Howard, of Chicago (Charles D. Snewind, of counsel), for Northwestern Heating & Plumbing Company, a Corporation, appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

This is an action brought by plaintiff, Louis Yankey, to recover for personal injuries sustained in a construction accident. Defendants are Northwestern Excavators, a division of Northwestern Heating and Plumbing Company, the owner of the tractor involved in the accident, and Oscar Bohlin & Son, the general contractor at the construction site. Bohlin subsequently filed a counterclaim, in the nature of an action over, against Northwestern. The jury returned a verdict in the sum of $75,000 against Bohlin alone, Northwestern being found not guilty. The counterclaim was excluded from consideration by the jury after all the evidence had been presented. Bohlin appeals, seeking reversal of both the judgment for Yankey and the exclusion of the counterclaim. Yankey cross-appeals the denial of a judgment notwithstanding the verdict against Northwestern or, in the alternative, requests a new trial as to Northwestern only.

While the record is voluminous, the operating facts are simple. The defendant, Bohlin, was the general contractor for the construction of an addition to a schoolhouse in Niles, Illinois. Yankey, who was employed by H. B. Olney, Inc., was the driver of a semi-tractor trailer and on March 17, 1953, delivered a load of joists to the premises in question and was injured when the boom of a hoist fell across the length of the semitrailer upon which he was standing. Yankey's injuries are not controverted on this appeal.

After Bohlin had been awarded the prime contract for construction of the school addition, the excavating work was subcontracted to Northwestern by written

contract. This work was accomplished by an excavator (a crane with shovel attached) owned by Northwestern and sent to the job site by Northwestern. The machine was operated by Northwestern's employee, Leo Smith, an experienced operator-engineer. Northwestern did this work for the contract price of $1,800. Upon completion of the excavating work, Northwestern and Bohlin entered into an oral agreement whereby Northwestern agreed to do hoisting work at the construction site. For this work Bohlin was invoiced on an hourly rate for use of the machine and services of Smith, its operator. In order to do the hoisting work it was necessary to convert the excavator into a hoist. This was accomplished by detaching a dirt-removing attachment called a hoe and attaching a boom in its place. Smith, with the assistance of several Bohlin employees, effected the conversion at the construction site. Upon the completion of the conversion, the equipment consisted of a tractor to which was attached a boom about 35 feet long and a hoist about 15 feet long, the total weight of the boom and joist being about 700 pounds.

On the day in question, Yankey had delivered prefab concrete joists to the job site and was standing on the trailer while the joists were being removed. As the joists were being lifted from the trailer, the boom of the hoist became disengaged and fell, striking Yankey. We see no reason to detail here the method used to secure the boom and cables for the lifting purposes, inasmuch as Smith, the operator of the crane, testified that the boom fell because the cable controlling the height of the boom disengaged itself from the wedge of the socket on top the cab, and Smith admitted that if the cable had been secured properly, the boom would not have fallen.

Yankey's complaint charged the defendants with both common law negligence and violation of the Struc-

 

tural Work Act, commonly referred to as the Scaffold Act. Ill Rev Stats, c 48, §§ 60–69.

 We shall first consider Yankey's cross-appeal against Northwestern. It is the law in this state that in ruling on a motion for a directed verdict or for judgment notwithstanding the verdict, the evidence must be considered, together with any reasonable inferences to be drawn therefrom, in its aspect most favorable to the party adverse to the motion, Paul Harris Furniture Co. v. Morse, 10 Ill2d 28, 139 NE2d 275, and that the reviewing court will not substitute its judgment for that of the jury in passing on the weight and credence of the various witnesses. City of Monticello v. LeCrone, 414 Ill 550, 111 NE2d 338. The jury verdict should not be set aside unless manifestly against and contrary to the weight of the evidence or, as sometimes stated, an opposite conclusion is clearly indicated. Cardona v. Toczydlowski, 35 Ill App2d 11, 180 NE2d 709.

 The Supreme Court's most recent review of the Scaffold Act is Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785. There, the question before the court was whether the Scaffold Act imposed strict liability on those persons enumerated in section 9 of the act. The court held the statute did not intend liability when there was no control, stating:

> The act specifies, "Any owner, contractor, subcontractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of the act, shall comply with all the terms thereof, . . . ." It is inescapable from these words that the legislature intended to hold liable those named persons *who are in charge of the work,* and the words "or other person" were included to cover

462

the situation where someone other than the named persons was in charge of the work, in order to prevent such person from escaping liability. 22 Ill2d at 319.

The court recognized that there may be more than one party in charge. In such situations, the injured party is not limited to an action against only one party, for the court stated, on page 322, in "operations of several contractors or subcontractors who are each in charge of a phase of the work, . . . the injured person has a right of action against any one of them, other than his employer, who may wilfully violate or fail to comply with the act."

■■■ Northwestern does not contend that Smith, its operator, was not negligent, but insists that Smith was a "loaned servant" under the exclusive control of Bohlin, thereby freeing Northwestern of liability. Northwestern submitted an instruction, given over objections, which presented to the jury the question of whether Smith was a "loaned servant" at the time of the accident. A person in the general employment of one person may, with his consent, be transferred to another for some particular work in such a way as to become the servant, for the time being, of the other in doing that work. Martin v. 1600 Hinman Ave. Corp., 339 Ill App 126, 88 NE2d 892. The test whether an employee becomes a "loaned servant" depends upon whether the employee becomes wholly subject to the second employer's control and freed during such time from the directions and control of his master. Gundich v. Emerson-Comstock Co., 21 Ill2d 117, 123, 171 NE2d 60.

■ Northwestern points out evidence presented at the trial which it claims supports the "loaned servant" theory and supports the jury verdict. The principal factors relied on include that Orland Hill, Bohlin's job superintendent "ran the job" in order to

463

expedite and correlate the work so "it dovetailed with other contractors" and told Smith "what was to be done and where the various joists and equipment were to be set into place." In addition, Smith received hand signals from Cecil Freeman, Bohlin's employee, directing him how and where he was to lift the heavy materials and where he was to place them.

Northwestern relies on Gundich v. Emerson-Comstock Co., 21 Ill2d 117, 171 NE2d 60, where the Supreme Court held that whether or not an employee has become a "loaned servant" was a question of fact and the Appellate Court cannot, as a matter of law, reverse the jury finding. An examination of the Gundich case does not support the argument that the facts here support a finding that Smith was a "loaned servant." In Gundich the action by the injured person alleged that the party causing the accident was the employee of one or both of the defendants and it was held that under such circumstances, neither defendant would be entitled to a directed verdict unless it appeared that the employee charged with negligence was, in fact, the employee of only one of the defendants.

In the case at bar, the undisputed evidence shows that Northwestern knew that their equipment was to be converted and used for a hoisting job, a dangerous operation. Northwestern authorized no other person but Smith, their employee who had fifteen years of experience as a crane operator, to convert and operate the lifting apparatus. Under the facts and circumstances in the record, Northwestern continued as a sub-contractor on the job, but instead of excavating, did hoisting work. Northwestern knew, or should have known, that it was its responsibility to attach the boom in a safe manner so as to avoid injury to others. This duty was under the control and direction of Northwestern. See Allen-Garcia Co. v. Industrial Commission, 334 Ill 390, 166 NE 78.

464

An almost identical situation was before this court in Murphy v. Lindahl, 24 Ill App2d 461, 165 NE2d 340. Plaintiff, an employee of the city, was working in a trench and was injured when struck by a trench digging machine owned by defendant. The defendant, as here, had furnished the operator as well as the machine and pleaded the "loaned servant" doctrine to escape liability. While on the job, the operator received orders and directions from either the foreman or supervisor, both employees of the city. On the first day the operator worked, the foreman complained to the supervisor about the manner in which the operator handled the machine in digging the trench. The supervisor contacted defendant and requested the operator be replaced because he "was not suitable for the job." Later the same day, the supervisor again telephoned defendant, requesting that they leave the operator on the job, stating, "he's real fine." After the accident, the operator was replaced by defendant at the request of the supervisor. In reviewing this fact situation, the court stated:

> "The machine was controlled entirely by [the operator], with the City employees telling him, by hand signals, where to dig the trench, how wide and how deep, and where to place the dirt. No person on the job, other than [the operator], had anything to do with the operation of the machine or its performance, . . . Even though the City had the right to demand that he be replaced or to stop the machine, it had no right to discharge him or to substitute an operator in his stead, and this was never attempted. No City employee had any control or direction of [the operator] in the actual operation of the 'backhoe' or the manner of accomplishing the end result, digging of a trench. . . . We do not believe that the proof here conclusively shows that [the

465

operator] surrendered the manner in which the machine should be operated or that he was for the time wholly subject to the control and direction of the City, to whom he was lent for the special service being performed, and freed during such time from the direction of his master." 24 Ill App 2d at 466-7

The identical situation existed here. Although Bohlin could have requested Smith be replaced as operator, Northwestern alone retained the right to fire Smith. Mr. Van Deusen, Northwestern's supervisor, so testified. While obeying hand signals given by Bohlin employees, Smith alone, as Northwestern's employee, controlled the operation of the machine.

In still another similar case, Merlo v. Public Service Co. of Northern Illinois, 381 Ill 300, 45 NE2d 665, the operator of a crane furnished by defendant was held not to be a "loaned servant," even though, as here, the operator received, from ironworkers not employees of defendant, instructions where to dig and directions when to lift and lower the loads.

The reasoning of the above cases is in accord with that of the United States Supreme Court in Standard Oil Co. v. Anderson, 212 US 215, 226; 29 Sup Ct 252, 256:

"Much stress is laid upon the fact that the winchman obeyed the signals of the gangman, who represented the master stevedore, in timing the raising and lowering of the cases of oil. But when one large general work is undertaken by different persons, doing distinct parts of the same undertaking, there must be co-operation and co-ordination, or there will be chaos. The giving of the signals under the circumstances of this case was not the giving of orders, but of information; and the

obedience to those signals showed co-operation rather than subordination, and is not enough to show that there has been a change of masters."

■ The fact that Smith responded to hand signals from Bohlin's employees, directing him as to what to do, and where he was to lift the heavy materials, and where they were to be placed, did not relieve Northwestern of its responsibility under the Scaffold Act. While performing these operations, Smith was acting within the scope of his employment with Northwestern.

■ In its appeal, Bohlin contends that the judgment for Yankey, against it, is erroneous in law and contrary to the overwhelming weight of the evidence. Bohlin relies on Gundich v. Emerson-Comstock Co., 21 Ill2d 117, 171 NE2d 60; Martin v. 1600 Hinman Ave. Corp., 339 Ill App 126, 88 NE2d 892, and Murphy v. Lindahl, 24 Ill App2d 461, 165 NE2d 340. None of these cases support Bohlin's contention that it is immune from liability under the Scaffold Act. In Martin the Scaffold Act was not involved. We are in accord with Bohlin that the "loaned servant" doctrine, as discussed in the Murphy case, has no application to the facts in this case and was erroneously submitted to the jury. However, in neither Murphy nor Gundich was the question of the general contractor's liability under the Scaffold Act before the court. As we stated previously, the liability of one contractor or subcontractor under the Scaffold Act does not relieve other contractors of liability if they had charge of the work.

Here, the evidence shows that Bohlin, as general contractor, directed, controlled and supervised the construction work. Bohlin's employees participated with Smith in effecting the change from excavator to hoist. Notwithstanding the fact that the crane and boom

467

had been used for two days prior to the occurrence, hoisting heavy materials, neither Bohlin nor Smith inspected the crane at any time to see whether the boom was properly secured. The negligently secured cable was in open view on top of the cab. The most casual inspection, in our opinion, would have revealed the dangerous manner in which the supporting cable was secured. The evidence shows that Bohlin was sufficiently in charge of the work to be liable under the rule set forth in Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785.

The fact that Northwestern is also liable under the Scaffold Act does not relieve Bohlin of liability. In Chmielewski v. Marich, 2 Ill2d 568, 119 NE 2d 247, it was said on p 571: "Every joint tort feasor is liable for all damages to which his conduct has contributed, and it is no defense that these damages would not have occurred without the concurring misconduct of another person."

In Kennerly v. Shell Oil Co., 13 Ill2d 431, 150 NE2d 134, it was established that, because the Scaffold Act deals with highly dangerous activities, it was intended by the Act to fix an independent, nondelegable duty of compliance upon each contractor and subcontractor engaged in the work. Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785, limited the liability to those in charge of the work. Bohlin, the general contractor, was in charge of the work and cannot escape liability even though Northwestern provided the machine and operator. Northwestern and Bohlin were both in control of the work here and both are liable under the Scaffold Act.

The final point in this appeal is the exclusion from the jury of Bohlin's counterclaim against Northwestern. The counterclaim was not excluded from the

468

jury until all the evidence had been heard. Bohlin contends the exclusion was error; the counterclaim should have been sent to the jury.

██ ██ The complaint against Bohlin was in two counts, violation of the Scaffold Act and common law negligence. Evidence was presented to support both theories. Under either theory, Bohlin would be liable as an active tort-feasor, and as such not entitled to recover over from a joint tort-feasor. Bohanon v. Joseph T. Ryerson & Son, Inc., 16 Ill App2d 402, 148 NE2d 602; Schulman v. Chrysler Corp., 31 Ill App2d 168, 175 NE2d 590. Liability under the Scaffold Act extends to those in charge of construction who make wilful violations of the act, wilful violations being knowing violations. Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 321, 175 NE2d 785. The common law negligence count was based on Bohlin's actively taking part in converting the excavator to a hoist and failing to inspect the equipment even though a safety supervisor was provided. The counterclaim was properly excluded from the jury, for if Bohlin were liable it would be only as an active tort-feasor and the law precludes indemnification between active tort-feasors. If Bohlin were found not to be liable, there would be no need for indemnification.

██ The final point in this appeal is Bohlin's contention that the exclusion of the counterclaim after all the evidence had been presented, adversely affected the issues in plaintiff's action against Bohlin. In Blaszak v. Union Tank Car Co., 37 Ill App2d 12, 184 NE2d 808, this court held it to be error to dismiss a third party indemnity action before presentation of evidence when the pleadings indicated a possibility of recovery over. If Bohlin's argument were sustained, an action over would always go to the jury even though

the evidence presented no question of fact for the jury. When Bohlin filed the counterclaim, it said in effect, if it were liable at all it was only as a passive tortfeasor. Bohlin undertook the risk that the counterclaim would be dismissed if the evidence failed to support this allegation. In addition, we find no indication in the record here that the jury verdict resulted from prejudice. The evidence amply supports the jury verdict.

The judgment for Yankey against Bohlin is affirmed. The exclusion of Bohlin's counterclaim is also affirmed. We conclude that Yankey's motion for judgment notwithstanding the verdict against Northwestern should have been granted. The verdict of not guilty for Northwestern is reversed and, as no question was raised on this appeal as to the amount of the verdict, the case is remanded to the trial court with directions to enter judgment against Northwestern for $75,000.

Affirmed in part, reversed in part and remanded with directions.

MURPHY and ENGLISH, JJ., concur.