Nicholas J. Pantaleo, Plaintiff-Appellee, v. Stanford Gamm and Julian Romane, d/b/a Gamm Construction Company, Defendants-Third Party Plaintiffs-Appellants, v. Peter J. Passantino, et al., Third Party Defendants.

Gen. Nos. 52,175, 52,290. (Consolidated.)

First District, First Division.

February 17, 1969.

Howard C. Sorensen, Pretzel, Stouffer, Nolan & Rooney, of Chicago (Joseph B. Lederleitner, of counsel), for appellants.

McCarty & Watson, of Chicago (John H. Watson, Jr., and John J. Ryan, of counsel), and Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Karl M. Tippet and D. Kendall Griffith, of counsel), for appellees.

MR. JUSTICE BURMAN delivered the opinion of the court.

Nicholas J. Pantaleo, an employee of the defendant's, roofing subcontractor, brought the present action against the general contractor, Stanford Gamm and Julian Romane d/b/a Gamm Construction Company (hereinafter referred to as general contractor), for injuries sustained while riding on a materials hoist. The plaintiff based his cause of action upon an alleged violation of sections 1 and 9 of the Structural Work Act (Ill Rev Stats 1967, c 48, pars 60, 69).[1] The defendant general contractor,

---

[1] Section 1 reads in part:

[A]ll scaffolds, hoists . . . erected or constructed . . . for the use in the erection . . . of any . . . building . . . shall be erected and constructed, in a safe, suitable and proper manner, and shall be erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person . . . employed or engaged thereon. . . .

in turn, brought a third-party action against the roofing subcontractor, the plaintiff's employer, for contribution or indemnification. The two actions were severed for trial and a verdict in favor of the plaintiff for the sum of $66,000 was returned by the jury in the first action. The third-party action was then submitted to the same trial judge, but without a jury, upon the record of the plaintiff's trial plus the testimony of one additional witness. The trial judge found for the third-party defendant and against the general contractor.

The general contractor appeals from the judgment on the verdict and the denial of the post-trial motions in the first cause (General Number 52,175). In the event the judgment in favor of the plaintiff in the first cause is upheld, the defendant appeals from the judgment of the trial judge in the second cause in favor of the third party defendant (General Number 52,290). We granted permission to consolidate the two appeals. No questions are raised on the pleadings.

The record reveals that the defendant contracted to build an addition to a synagogue at 3535 West Foster Avenue in Chicago. The contract read in part that:

> [T]he general contractor shall provide all labor and material necessary to complete the construction of the building. . . .

> To furnish and maintain all equipment, such as temporary stairs, ladders, ramps, scaffolds, hoists, runways, derricks, shoots, elevator, as necessary for the proper execution of the work of all contractors. . . .

---

Section 9 reads in part:

Any . . . contractor . . . having charge of the erection, construction . . . of any building . . . shall comply with all the terms thereof. . . . For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions. . . .

The contractor shall take all necessary precautions for the safety of the employees on the work, and shall comply with all applicable provisions of the State, Federal, and Municipal safety laws and building codes to prevent accidents or injury to persons on, about, or adjacent to the premises where the work is being performed. . . .

. . . shall erect and properly maintain at all times, as required by the conditions and progress of the work, all necessary safeguards for the protection of workmen and the public, and shall post danger signs warning against the hazards created by such features of construction as protruding nails, hoists, well holes. . . .

The general contractor retained the masonry, carpentry, and cement jobs and subcontracted all of the other work. Hersch Quality Roofing, Inc. (hereinafter referred to as Hersch) was employed by the general contractor as the roofing subcontractor.

■ On August 9, 1962, the subcontractor Hersch began work on the roof of the synagogue addition, thirteen days after anyone from the general contractor had been on the job site. That same day the injury that gives rise to the case at bar was sustained. The plaintiff, an employee of Hersch, jumped on top of some rolls of roofing paper which he and another roofer had placed on the materials hoist. The roofing foreman then raised the hoist. The rolls had been stacked on the platform of the hoist to a height of four feet. As the hoist ascended to the roof the hoist began to shake and the plaintiff lost his balance. He grabbed the cable of the hoist and his hand passed through the top cable pulley amputating four fingers.[2]

---

[2] The defendant general contractor has put great emphasis on the fact that the plaintiff was standing upon four feet of roofing paper rolls. This the defendant maintains made the plaintiff the

Harold Schaefer, an employee of Hersch, testified that he and another employee loaded a truck with roofing material on the morning in question and arrived at the project before 8:00 a. m. He stated that he did not bring a hoist or a scaffold with him and he said that he did not see any stairways in or about the building. Schaefer also said that he did not bring any ladders of sufficient length to reach the roof of the building. He testified that Peter Passantino, his foreman, cranked up a small gasoline engine hoist which was on the premise and which was not locked. The hoist extended six feet above the roof of the addition. Both Schaefer and the foreman rode up to the roof. Schaefer swept the roof and then came back down on the hoist. He said he then helped the plaintiff stack rolls of roofing material on the hoist. The rolls were secured, he stated, by two pieces of wood used as wedges. Schaefer further testified that he began another task when his attention was drawn to the hoist because of an unusual noise. "It was bouncing up and down, chattering as it went up." Schaefer said he saw the plaintiff squatting down a little while on top of the rolls. He then observed the plaintiff lose his balance when the hoist was fifteen to eighteen feet above the ground and grab the cable to steady himself, before he was injured.

Plaintiff Nicholas Pantaleo testified that when he came to the construction site on the morning of August 9, he saw someone riding to the roof on the materials hoist. He then rode up to the roof in a trial run with his foreman, Peter Passantino, operating the hoist. The plain-

---

equivalent of "nine to ten feet tall and even the design of an elevator would not have to anticipate people that tall." This claim sounds as though it is a claim of contributory negligence. Doctrines of assumed risk and contributory negligence by an employee have no application to the Structural Work Act (Ill Rev Stats 1967, c 48, par 60 et seq.). Thomas v. Carroll Const. Co., 14 Ill App2d 205, 144 NE2d 461.

tiff got off the hoist at roof level and changed into his work clothes. When the plaintiff and his foreman came down again, the plaintiff gathered some tools together and then began loading rolls of roofing material on the hoist with the help of Schaefer. After Schaefer had wedged the rolls the plaintiff climbed on top of the roofing material. The foreman Passantino operated the hoist. The plaintiff stated that when the hoist was halfway to the roof "it started to shake violently" and "I felt that I was going to lose my balance so I then turned instinctively and grabbed the cable." Immediately thereafter the plaintiff's glove got caught in the pulley and two fingers on his left hand were severed. In an apparent attempt to lower the hoist the roofing foreman operated the hoist in such a way as to cause the plaintiff's hand to pass completely through the cable pulley and as a result two more fingers were severed.

We first consider the defendant general contractor's appeal from the judgment in favor of the plaintiff Pantaleo. The defendant contends that (1) the verdict is not only against the manifest weight of the evidence, but has no probative evidence to support it and the trial court should have directed a verdict for the defendant; (2) it was prejudicial error to refuse defendant's instruction embodying defendant's theory of the case; and (3) the verdict is excessive and is the cumulative result of all the prejudicial errors committed and particularly of the prejudicial error committed in giving plaintiff's instruction which permitted the jury to find loss of present and future profits as damages solely upon evidence of plaintiff's checking account.

In support of the defendant's first contention that the verdict was against the manifest weight of the evidence and that it was entitled to a directed verdict, the defendant argues that there is no evidence that the general contractor knew that anyone was using the materials

hoist as a passenger elevator or that permission was granted for such a use.

A similar claim was made in Lawler v. Pepper Const. Co., 33 Ill App2d 188, 178 NE2d 687. In Lawler the defendant was a subcontractor engaged by the American Glass Company to remove sashes and molding from around store windows. There was evidence in the case that the defendant's employees left a scaffold on the job site. When some metal workers employed by the American Glass Company came to the job they used the scaffolding and the plaintiff was injured. The defendant's foreman testified that he did not see the metal workers use the scaffold in question and that in any event, the metal workers did not have permission to do so, especially in light of the fact that they had their own jack ladders and planks. The Appellate Court concluded that:

> "the jury could have found that employees of American [the metal workers] had used the Pepper scaffold during the course of remodeling the windows, that Pepper had left its scaffold up on Friday knowing that the metal workers would be following it on the job and that this was equivalent to an invitation to them to continue using it."

Lawler v. Pepper Const. Co., 33 Ill App2d 188, 193, 178 NE2d 687, 689.

■ We cannot discover any reason why the circumstances in the case at bar present any less of an invitation to the roofers to use the materials hoist than that which was extended to the metal workers in Lawler. In fact, the instant case presents more compelling reasons than Lawler to find that such an invitation was extended. The only way the roofers could reach the roof was by means of scaffold, hoist or ladder. There were no other means of access. However, despite this the defendant general contractor did not provide scaffolding or ladders. Only the general contractor's materials hoist

124

was found on the job site. Thus, applying the reasoning of Lawler to the case at bar, the jury could find that the defendant general contractor left the materials hoist on the job site knowing that the roofers would soon begin work and knowing that there were no ladders or scaffolds on the site and we hold, therefore, that this was equivalent to an invitation to the roofers to use the hoist to ascend to the roof.

 The defendant also argues that it had no knowledge that anyone was using the materials hoist as a passenger elevator. We do not find this argument persuasive. As we stated in Dinschel v. United States Gypsum Co., 83 Ill App2d 466, 476, 228 NE2d 106, 112:

> [a]ll persons in "charge" of the work are liable not only when the dangerous conditions are known to them, but also when by the exercise of reasonable care the existence of such dangerous conditions could have been discovered and become known to them. . . . The Statute puts absolute and unconditional liability on the person or persons who have charge of the work wherein a scaffold or hoist is used.

The defendant maintains, however, that it was not "in charge" of the work and thus, not liable, since the evidence shows that none of its employees were on the premises on the day in question nor had they been for thirteen days prior to the occurrence. The defendant places much reliance on Vykruta v. Thomas Hoist Co., 75 Ill App2d 291, 221 NE2d 99. In Vykruta the defendant had rented a hoist to the mason contractor. The defendant was not a contractor and did not participate in the erection or construction of the building. The plaintiff rode on the hoist and was injured. The Court held that the mere furnishing of equipment does not render one in charge of the construction.

■ ■ We do not feel that Vykruta is applicable to the facts of the case at bar. In the instant case the defendant was the general contractor employed by the owner to construct the addition to the synagogue. Under the contract the defendant was required to furnish hoists, take all precautions for the safety of the employees at the job site, and to erect and properly maintain at all times, as required by the conditions and progress of the work, all necessary safeguards for the protection of workmen and the public. The general contractor agreed to supervise all of the work. The defendant seems to be contending that because it was not "supervising" the work on the day of the accident or for thirteen days prior to the accident it should not be held liable. However, it appears clear to us that it was not the legislative intent that those retaining the right to supervise or control the work should be freed from duty by doing nothing. Larson v. Commonwealth Edison Co., 33 Ill2d 316, 211 NE2d 247. If this were allowed the very purpose of the Structural Work Act would be defeated. Louis v. Barenfanger, 39 Ill2d 445, 236 NE2d 724. At the very least, there is sufficient evidence from which the jury could reasonably conclude that the defendant had charge of the work within the meaning of the statute. It was a disputed question of fact and it was within the province of the jury to determine this issue. Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785.

The defendant also argues that the materials hoist was not designed to be a passenger elevator and that the roofing contractor had no right to allow the plaintiff to use it as such. The Appellate Court was faced with approximately the same contention in Frick v. O'Hare-Chicago Corp., 70 Ill App2d 303, 217 NE2d 552. There an electrician stood on an unsecured plank fourteen feet above the basement floor in order to take measurements for an electrical wire conduit pipe. As the plaintiff turned

126

to leave, the board slipped and he fell to the ground. Apparently, there was no practical way for plaintiff to perform his task other than to stand on the plank covering the concrete form. The defendant contended that the plank from which plaintiff fell was not a scaffold within the meaning of the Structural Work Act because it was not part of a platform, but merely a covering for a concrete form. In reversing the summary judgment in favor of the defendant we stated that the "plaintiff had to stand on something, and the record indicates that the 2x6 plank was the only platform available to him." Frick v. O'Hare-Chicago Corp., 70 Ill App2d 303, 309, 217 NE2d 552, 555.

■ In the instant case, the plaintiff had to use something to reach the roof of the building. There were no ladders, stairways or other means to ascend to the roof. Like the 2x6 plank in the Frick case, the materials hoist was the only means available to the plaintiff to reach his work area. Thus, necessity—of which the defendant should have been aware—forced the plaintiff to utilize the materials hoist and therefore, the hoist was brought within the scope of the Structural Work Act.

■ The defendant general contractor also maintains in support of his first contention that the verdict was against the manifest weight of the evidence and that it was entitled to a directed verdict in that there is no salient evidence that the materials hoist was defective. This contention was also made by the defendant in Oldham v. Kubinski, 37 Ill App2d 65, 185 NE2d 270. There the plaintiff was injured when he fell upon a raised bucket of an excavating machine. Rejecting the contention, the Court said:

> It is also true there was no evidence of any defect or damage to the shovel itself as a shovel or a loader before or after the accident. Those and other related factual matters were, however, primarily, prob-

lems for the jury in determining if this instrumentality so used here as a scaffold, or hoist, or support, or mechanical contrivance, was furnished in a safe, suitable, and proper manner for that purpose and gave proper and adequate protection to the plaintiff.

Oldham v. Kubinski, 37 Ill App2d 65, 87, 185 NE2d 270, 279–80.

From the evidence in the case at bar the jury could have found that the hoist was unsafe because it had no guard over the pulley and no sign limiting the use of the hoist to materials only and prohibiting persons from riding on it. Furthermore, the hoist was so improperly operated that the platform shook as it ascended causing injuries to the plaintiff. The safety of a scaffold or hoist was a question of fact for the jury. Oldham v. Kubinski, 37 Ill App2d 65, 185 NE2d 270.

In our view we hold that the defendant was not entitled to a directed verdict in its favor and that the verdict and judgment entered thereon was not against the manifest weight of the evidence.

The defendant general contractor, in its second contention, argues that it was error for the trial court to refuse to give the following instruction tendered by the defendant:

The plaintiff's basis of claimed damages against the defendants is the Structural Work Act. Before you find that said Act is applicable to the facts and circumstances in evidence you must find that the hoist in question was either expressly or impliedly supplied or provided for use by the plaintiff or his employer, Hersch Quality Roofing, Inc., a corporation.

■ ■ Initially, we agree with defendant that a party to a lawsuit has the right to have the jury instructed upon his theory of the case when there are pleadings

and evidence which support his theory. This peremptory instruction, however, incorrectly states the law, it is argumentative, slanted and does not include all the proper facts. Therefore, we hold that the instruction was properly refused.

 Finally, the defendant contends that the verdict is excessive and is the cumulative result of prejudicial errors, particularly the error committed by giving the plaintiffs IPI damage instruction 30.01. This instruction is objected to because it included the element of profit. While the instruction may not be tailor made for the plaintiff in the instant case, it does adequately contain most of the elements of damage which would reasonably and fairly compensate the plaintiff if the jury decided for him. We hold that the jury was not misled by the objectionable part of the instruction.

 The defendant also objects to the size of the verdict. The verdict in favor of the plaintiff was in the sum of $66,000. Plaintiff, who was 27 years of age, has been severely and permanently injured. We cannot say after reviewing the evidence (which we need not detail) that the judgment was palpably excessive as a matter of law.

We next consider the defendant general contractor's appeal from the judgment rendered in the third-party action (General Number 52,290). The trial court found that Hersch, the roofing subcontractor and third-party defendant, breached no implied obligation of its subcontract and that the general contractor, third-party plaintiff, was guilty of active negligence.

 There is no right to indemnity, express or implied, for one's own negligence in the absence of an express provision clearly requiring it. Westinghouse Elec. Elevator Co. v. La Salle Monroe Bldg. Corp., 395 Ill 429, 70 NE2d 604. The evidence, which we have already discussed, clearly shows, in the case at bar, that the general contractor was exposed to liability not by the acts of

another, but by its own acts and obligations. We find that there is ample evidence to support the judgment and, therefore, it must be affirmed.

The judgments will, therefore, be affirmed.

Affirmed.

ADESKO, P. J. and MURPHY, J., concur.