Paul Jackson, Plaintiff-Appellee, v. H. J. Frierdich & Sons, Inc., *et al.*— (H. J. Frierdich & Sons, Inc., Defendant and Third Party Plaintiff-Appellant, v. William Baker Building Cleaning Company, Third Party Defendant-Appellee.)

(No. 70-9;

Fifth District—August 12, 1971.

*Rehearing denied September 9, 1971.*

Oehmke, Dunham, Boman & Leskera, of East St. Louis, for appellant.

Listeman, Bandy & Hamilton, of East St. Louis, (Charles E. Hamilton, of counsel,) and Paul L. Pratt, of East Alton, (Pratt, Williamson, Mosele & Day, of counsel,) for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This action was brought by the plaintiff, Paul Jackson, to recover damages occasioned by the alleged violation of the Structural Work Act (Ill. Rev. Stat. 1965, ch. 48, par. 69), by the defendants, H. J. Frierdich & Sons, Inc. and John Brancaglione, Jr. In turn, defendant Frierdich brought a third-party action against the third-party defendant, William Baker Building Cleaning Company, hereafter referred to as Baker. At the close of the evidence in the case, the court directed a verdict in favor of the third-party defendant, Baker. The jury returned a verdict for plaintiff against the defendant Frierdich and in favor of the defendant Brancaglione.

Judgments were entered on the verdict of the jury and on the court's directed verdict from which judgments this appeal is brought.

The facts which brought this to litigation are as follows: The Immaculate Conception Church in Columbia, Illinois, entered into a contract with third-party defendant, Baker, as the general contractor to renovate the church building. The renovation involved removal of old brick and stucco from the church walls and putting on new brick and the installation of a new roof among other general work.

The third-party defendant contracted with defendant John Bran-

caglione, Jr., d/b/a Brancaglione Building Contractor, hereinafter called Brancaglione, to perform the brick work. This work was to be performed on a cost plus a fee basis. Third-party defendant contracted with defendant H. J. Frierdich & Sons, Inc., hereinafter called Frierdich, to do the carpenter work on a time and material basis.

The plaintiff, Paul Jackson, hereinafter called the plaintiff, was the foreman for the third-party defendant.

On July 30, 1963, the plaintiff fell from a scaffold on the east side of the church. At the time of the fall, bricklayers were working from a scaffold on the south side of the church. Just prior to the plaintiff's fall, the plaintiff was upon the scaffold with the bricklayers because of some matter having to do with their work.

The scaffold, from which the plaintiff fell, was a tubular type, two sections or 10 feet high. There was no one else on this scaffold and there were no witnesses to the fall.

The plaintiff testified that he stepped from the roof of the church onto a scaffold board on the top section of the tubular scaffolding. When he did so, the board slipped and he fell to the ground suffering injury.

The testimony shows that the scaffold from which the plaintiff fell was erected and used by several groups of persons. Laborers employed by third-party defendant erected a single five-foot high section of the scaffold from which the bricklayers worked. After the bricklayers had completed their work, laborers started to remove this scaffolding and had removed the boards when request was made by the carpenters to leave the tubular sections. The custom of the industry is that crafts allow other crafts to use their scaffolding when so requested in order that the effort of erecting and removing scaffolding not be duplicated. And further, the custom was that the craft requesting the tubular scaffolding would furnish their own boards.

Brancaglione and third-party defendant, Baker, both had scaffolding on the job site. The scaffolding was intermingled but each had different colors to allow for identification of ownership.

The work that the carpenters performed on the east wall required the use of a second section of scaffolding and there was testimony that the carpenters erected the second section. There was further testimony that the carpenters used the scaffold both prior and subsequent to the date plaintiff fell. The evidence showed that neither the plaintiff or third party defendant had anything to do with the erection of the scaffold.

There is no testimony as to the ownership of the scaffold board which slipped or who in fact placed the board itself on the scaffold. There is no testimony as to the condition of that board or how long it had been

up prior to the fall, but plaintiff testified the board was not secure and slipped when he placed his weight upon it.

There were six carpenters that worked on this job at one time or another. Two carpenters testified for Frierdich and they stated that they could not remember whether or not they had erected the scaffolding and they did not know who did. Both recalled working from the scaffolding. Frierdich acknowledged the need for two sections of scaffolding for some of the brick work.

The defendant, Frierdich, urges that the plaintiff did not prove a case under the Structural Work Act, *supra*, and that as third-party plaintiff it did prove a submissible case of implied indemnity against the third-party defendant.

Frierdich contends that there was no evidence that it was in charge of the work of constructing the scaffold, no evidence that the scaffold board involved was placed in position by Frierdich, no evidence that the scaffold was not erected in a safe, suitable and proper manner. Frierdich further contends that liability cannot be based upon speculation or conjecture.

█ We agree that liability cannot be based upon speculation, surmise, or conjecture. *Withey v. Illinois Power Co.,* 32 Ill.App.2d 163, 177 N.E.2d 254.

█ However, we do not find this to be the case. If plaintiff's testimony is taken as true, an inference of a defect in the scaffolding from the accident itself is reasonable. (*Huckabee v. Bell & Howell,* 102 Ill.App.2d 429, 243 N.E.2d 317.) There is undisputed evidence that Frierdich constructed the scaffolding and that Frierdich used the scaffolding before and after the plaintiff's fall. In a brief filed in the trial court on Frierdich's behalf, "it would concede that in the erection of the scaffolding it was in charge of that phase of the operation". Frierdich must, therefore, be responsible for its safe construction. (*Larson v. Commonwealth Edison Co.,* 33 Ill.2d 316, 211 N.E.2d 247; *Lawler v. Pepper Construction Co.,* 33 Ill.App.2d 188, 178 N.E.2d 687; *Burger v. Van Severn,* 39 Ill.App.2d 205, 188 N.E.2d 373.) It cannot, therefore, be said that there was no evidence to support the jury's findings that Frierdich was "in charge" of the work involving the construction of the scaffolding. The jury had sufficient evidence from which to conclude that the scaffold did not meet the Act's requirements of safety, suitability and propriety. The Act places absolute and unconditional liability on any person in such a case. *Pantaleo v. Gamm,* 106 Ill.App.2d 116, 245 N.E.2d 618; *Dinschel v. United States Gypsum,* 83 Ill.App.2d 466, 228 N.E.2d 106. The record contains sufficient evidence for the jury to find the elements necessary

to hold Frierdich liable under the Act. The jury thus determined that Frierdich was guilty of active negligence.

■ Frierdich next contends that it proved a submissible case of implied indemnity against the third-party defendant. Frierdich correctly asserts that the mere fact that a party may erect a portion of the scaffold does not mean that any violation of the Structural Work Act on its part will, as a mater of law, be an active violation and thus preclude an indemnity action. (*Moroni v. Instrustion-Prepakt, Inc.*, 24 Ill.App.2d 534, 165 N.E.2d 346; *Larson v. Commonwealth Edison Co.*, 33 Ill.App.2d 188.) However, the record is without evidence of any activity by the third-party defendant in connection with the construction of the scaffold. The record on the other hand is replete, as set forth previously, with evidence that Frierdich was an active and primary violator of the Structural Work Act, *supra, Sack v. Arcole Midwest Corp.*, 33 Ill.App.2d 344, 179 N.E.2d 441.

■ Frierdich as third-party plaintiff contends that the liability of third-party defendant should be decided by the jury. But in a case such as this where the only evidence of active conduct falls upon the third-party plaintiff, there can be no contribution from a third-party defendant. (*Yankey v. Oscar Bohlin & Sons, Inc.*, 37 Ill.App.2d 457, 186 N.E.2d 57.) "The evidence establishes without contradiction that the defendant (third-party plaintiff) was an active tort-feasor, while the plaintiffs [third-party defendants] were passive tort-feasors. We are of the opinion that the trial judge was right in directing a verdict for the plaintiffs [third-party defendants]."

The court below directed a verdict after all of the evidence was heard and made its determination from the evidence. It concluded that Frierdich was the primary and active violator of the Act, and that as such, Frierdich could not have any contribution or indemnity from the third-party defendant. We have examined the record and find adequate support for the trial court's findings.

Judgment affirmed.

CREBS and JONES, JJ., concur.