**Vincent W. SCHMID, Plaintiff,**

v.

**UNITED STATES of America, Defendant and Third Party Plaintiff (LOREN "MIKE" KRAUSE CONSTRUCTION COMPANY, Inc., an Illinois corporation, Third Party Defendant).**

**Civ. A. No. 3449.**

United States District Court
E. D. Illinois.

July 23, 1957.

Listeman & Bandy, East St. Louis, Ill., for plaintiff.

C. M. Raemer, U. S. Atty., and Jack C. Morris, Asst. U. S. Atty., East St. Louis, Ill., for United States.

Pope & Driemeyer, East St. Louis, Ill., for third party defendant.

JUERGENS, District Judge.

This is a civil suit arising against the United States of America under the provisions of § 2674, Title 28, U.S.C., and § 60 to § 69, both inclusive, of Chapter 48, Illinois Revised Statutes, 1955, commonly known as the "Scaffolding Act."

The plaintiff was employed by the Loren "Mike" Krause Construction Company, Inc., who had a contract with the United States, as a carpenter in the repair of building No. S–920 owned by the United States at Scott Field Air Base, a military installation. In the performance of his duties the plaintiff was required to work upon a scaffold elevated 10 feet above the surface of the ground. He fell from this scaffold and was injured.

The suit was brought against the United States alleging the violation of the provisions of the "Scaffolding Act" by wilfully failing to maintain, furnish or provide plaintiff with a safe and sufficiently supported scaffold upon which to carry out his duties as a carpenter.

The United States of America answered denying all of the allegations of the complaint except the jurisdictional averments and at the same time filing a Third Party Complaint making Loren "Mike" Krause Construction Company, Inc., a Third Party Defendant, under which it claimed indemnification under its contract with Krause; further stating that the plaintiff was an employee of Krause, that the injuries to the plaintiff resulted from the negligence of Krause in failing to furnish a safe and sufficiently supported scaffold upon which plaintiff was to carry out his duties and that if plaintiff recovered judgment from it, then the United States was entitled to indemnification from Krause pursuant to Paragraph 11 of the contract.

The case was tried by the court upon plaintiff's complaint, as amended, the amended answer of the United States, the amended answer of Loren "Mike" Krause Construction Company, Inc., to the plaintiff's complaint, the Third Party Complaint and the amended answer of the Third Party Defendant to the Third Party Complaint.

During the trial the following stipulation was entered of record: "Let the record show that counsel for the defendant, Loren M. Krause Construction Company, Inc., stipulate that in the event

the United States Government is found liable to the plaintiff in the case now on trial, that the insurer of the Loren M. Krause Construction Company will be liable to the government to the extent of its policy contract, or to the extent of any judgment that might be rendered for and in behalf of the plaintiff up to the sum of $50,000.00." By amendment made to the complaint during the trial the ad damnum was reduced to $50,000.

Loren M. Krause, President of the Loren "Mike" Krause Construction Company, Inc., was called as a witness under Rule 43b. He testified that he had a contract with the United States to repair building S–920 at Scott Field; that it was a one-story frame building "at the very top" 15 or 16 feet high; that the patented steel scaffolding belonged to him; that they are in 5 feet high and 7 feet long sections and that the trades that would be working off of them put them together; that any scaffolding has a tendency to shift from the weight walking across it; in other words, it has a tendency to creep and that to keep the boards from shifting or creeping, if a scaffold is properly constructed, the boards the men walk on have cleats under them. When called as his own witness, he testified that the people he had working on the job were not employees of the government but were his employees. He paid their wages and directed the performance of their work.

Plaintiff Vincent Schmid testified he was working on the alert hangar at the field when between 2 and 3 o'clock in the afternoon Krause's foreman called him "to come from the alert hangar to this building" and directed him to put siding on the building. The scaffold was there. It was 10 feet high and 40 or 50 feet long. That he did not examine it before he went up. That he was working there a short time when he and Charles E. Thomas, a fellow carpenter, walked to side of scaffold to get material laid there by a laborer. That "as we walked from the first on to the second section, we stepped on the board we used as a walk-away and the board went down with us."

It slipped off the end of the scaffold and he was thrown to the ground and was injured. That while on the ground he looked at the boards and that "they lacked the cleats on the ends." He also testified that he then noticed that the scaffold had only one brace on each side instead of the usual two and that "only one brace will make it shake." The cleats are to keep the boards from walking back and forth and working themselves loose. That a Mr. Dunbar, a government inspector, came around once or twice a day and that if material was bad he "gave orders" about that. Sometimes a man in uniform came with him. He drove a United States truck.

On cross-examination he testified that he was an employee of Krause and not of the government and that Dunbar was not boss on that particular job and "never told me anything on this job." That if Dunbar told us about bad weather-boarding "we would get in touch with our foreman and it would be taken care of." That he took orders from his foreman and that the United States did not erect the scaffold. That he noticed nothing unusual about the scaffold when he walked over it and that if he had noticed anything unusual about it he would have done something about it.

Charles E. Thomas, a fellow carpenter, testified that plaintiff had worked about half an hour before accident happened; that "I would say a board slipped off"; that 2 or 3 boards fell off and they had no cleats but that some of the boards had cleats. That inspectors came around about once a day but exercised no active control on what to do or what not to do or where to place this or that. On cross-examination he admitted telling Mr. Krause some time after this accident that it was his carelessness and not his (Krause's). That on the 19th of September, 1955, the day prior to the accident, he helped carry the scaffold down there "we just carried it end for end." That it was the same frame and everything on the scaffold on the 20th as it had been on the day before and that the only difference was they moved it along

as the work progressed. That he had never complained about the scaffold being inadequate or deficient.

LeRoy Feltman, a fellow employee, testified that he was about 6 or 7 feet north of plaintiff when he fell. That he was going for material to hand up to them; that he would bring it up and lay it up against the scaffold. That some boards had cleats, others didn't. That a government inspector was there a little after 8 that morning, that he was there about once a day. That if they passed up a board that was bad the inspectors would tell us to take it out. That the government inspectors had no control whatever over him or any of Krause's work, that he took orders from the superintendent of Mr. Krause.

The remaining testimony in this case pertains to the injuries and the medical interpretations thereof which is not necessary to discuss in view of the decision to be made herein.

The United States Supreme Court in the recent case of Rayonier, Inc., v. United States, 352 U.S. 315, 77 S.Ct. 374, 376, 1 L.Ed.2d 354, said:

"But as we recently held in Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, [100 L.Ed. 48], the test established by the Tort Claims Act for determining the United States' liability is whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred."

Therefore, if a private person would be responsible for similar negligence under the Scaffolding Act, then the United States would be responsible.

The so-called Scaffolding Act (Chapter 48, Sections 60–69, inclusive, Revised Statutes 1955) is entitled as follows:

"An Act providing for the protection and safety of persons in and about the construction, repairing, alteration, or removal of buildings, bridges, viaducts, and other structures, and to provide for the enforcement thereof."

Section 60 reads as follows:

"That all scaffolds, hoists, cranes, stays, ladders, supports or other mechanical contrivances, erected or constructed by any person, firm, or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon * * *."

Section 69, entitled "Penalties—Recovery of damages—attorney's fees", provides:

"Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this act, shall comply with all the terms thereof, and any such owner, contractor, sub-contractor, foreman or other person violating any of the provisions * * * shall * * * be fined not less than * * *."

"For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; * * *."

The first case in Illinois interpreting the language of the Scaffolding Act was Claffy v. Chicago Dock & Canal Co., 249 Ill. 210, 94 N.E. 551, decided in 1911. A wrongful death action was originally brought against the appellant, as owner of a building in process of construction,

and Henry Erickson, a contractor doing part of the work in constructing the building. The building was six stories high. There was an elevator shaft through which materials were hoisted. It was protected on the West, North, and East by a plank nailed to posts on each of the three sides. The plank on the North side was about three and one-half feet from the edge of the opening. Deceased was a plumber and was making a change in a heavy iron pipe which was about three feet or a little more North of the opening and between the protecting plank and the opening. The proof showed that there was no general contractor having a contract for the construction of the entire building, but separate contracts were let to different contractors for the separate units of work. Erickson was the contractor for the brick work. Christian A. Eckstrom testified he was the architect for the appellant and appellant relied upon him to superintend the work, that he looked after the work done by the various contractors, and during part of the time was at the building everyday and at other times three or four times per week. The court, 249 Ill. at page 222, 94 N.E. at page 555, said:

"In our opinion it was intended by section 7 to, and said section 7 does, impose upon both the contractor and the owner the duty of complying with the provisions of said section so far as civil liability is concerned, but under the facts in this case the owner never parted with the control and supervision of the building to any contractor, but through its agent, the architect, retained control and supervision of the work and was subject to the civil liabilities provided by the act for a failure to comply with the requirements of section 7. We cannot agree with the contention of appellant that the architect, under the facts in this case, can be considered as an independent contractor having exclusive control and charge of the building and the work."

The court held the owner liable because he never parted with the control and supervision of the building to any contractor, but through its agent, the architect, retained control and supervision of the work and was subject to the civil liabilities provided for by the act.

In Schultz v. Henry Ericsson Co., 264 Ill. 156, 106 N.E. 236, 239, decided in 1914, the facts are that appellee sued for personal injuries sustained by falling from a scaffold or runway on which he was working while in the employ of the appellant who was engaged in the construction of a steel and brick building in Chicago on which the work had been completed to about the level of the second floor. Appellant's claims are (1) insufficient showing of wilful violation of the Scaffolding Act: (2) evidence fails to establish common law negligence; (3) failure to show wilful violation of the act; (4) that construction of scaffold was not proximate cause of injury. At the time of the injury appellee was wheeling a wheelbarrow load of mortar to the masons working on the building. In taking the wheelbarrow from the hoist to the place where the masons were at work, the men wheeling the loaded wheelbarrows would meet those returning with the empty wheelbarrows at various places on the runway. About twenty-five wheelbarrows were employed altogether on the work and seven or eight men were engaged in the wheeling operations so that on each trip the wheelers would have a different wheelbarrow. While meeting a fellow wheeler a wire in the rim of the tray of the wheelbarrow used by appellee touched the other wheelbarrow and unbalanced him, throwing appellee to the first floor and seriously injuring him.

"Appellant insists that in order to recover under this statute it must be shown that the employer knew, or had good reason to suppose, that the scaffold in use was not erected and constructed in a safe, suitable and proper manner, and so constructed, placed, and operated as to give adequate protection to the lives and

limbs of those employed thereon, and that notice of such fact must be brought home to the employer by complaint from the employee or otherwise, or he will not be liable. With this contention we are unable to agree. Notice of the conditions is notice of the dangerous conditions, if the conditions are, in fact, dangerous."

But the court said:

"The language of the statute is mandatory and imperative that the scaffold shall be so constructed as to be safe and afford adequate protection to the persons working thereon, and the employer cannot escape liability for a wilful violation of the statute were he constructs an insufficient, unsafe and dangerous scaffold, even though he may have believed the scaffold constructed by him safe and the conditions under which it was being used not dangerous."

The court further held that the word "wilfully" is synonymous with "knowingly" and to constitute a wilful violation of the statute it is not necessary that there should have been "a reckless disregard" of its provisions.

The next case decided under this act was Griffiths & Son Co. v. National Fireproofing Co., 1923, 310 Ill. 331, 141 N.E. 739, 741, 38 A.L.R. 559. Appellee Griffiths was the general contractor for the construction of the Lytton Building in Chicago for The Hub, a corporation, which was the owner. Appellee entered into a contract with the appellant to do the fireproofing work on the building, which also provided that the appellant should hold the appellee and The Hub harmless from loss, etc. Appellant had erected a scaffold on which was placed a pile of fireproof tile, a part of which fell off injuring one Slaughter who sued the appellee, The Hub, and others including appellant. Appellant under a covenant not to sue was dismissed from the action. Another suit was then filed excluding appellant as a defendant. Appellee noti-fied appellant of the pendency of this suit and demanded that appellant assume the defense under the provisions of the contract between the parties whereby appellant agreed to hold appellee harmless, etc. Appellant refused and appellee defended and subsequently paid the judgment assessed by the jury against the appellee and The Hub.

The question for decision by the court in the Griffiths case was whether or not the sub-contractor's undertaking to indemnify the general contractor or the owner against the sub-contractor's negligence is against public policy and void because based upon the owner's or contractor's violation of the law. The court answered this in the negative and said, "The undertaking of the appellant is not an illegal contract and is not to indemnify against an illegal act."

The court in the Griffiths case also said:

"The act of 1907 imposes upon the contractor and the owner, as well as upon sub-contractors, foremen or others engaged in the work, the duty of complying with the provisions of the act so far as the civil liability is concerned. Claffy v. Chicago Dock & Canal Co., 249 Ill. 210, 94 N.E. 551. Before the enactment of this law, where work was done under such circumstances as to constitute the person doing it an independent contractor, the owner was not liable for an injury caused by the negligence of such independent contractor. Scammon v. City of Chicago, 25 Ill. 424; Pfau v. Williamson, 63 Ill. 16; Jefferson v. Jameson & Morse Co., 165 Ill. 138, 46 N.E. 272. Since the enactment of this law the owner of the property and every contractor and subcontractor are equally bound by the act to comply with its provisions, and in case of willful failure are liable to the party injured for any direct damages sustained by reason of such failure. This liability to the person injured the owner or original contractor cannot evade by any con-

tract with the contractor or sub-contractor."

The holding of the court was "It is not contrary to public policy that the appellant should contract to pay the damages caused by its own negligence."

In Fetterman v. Production Steel Co. of Illinois, 4 Ill.App.2d 403, 124 N.E.2d 637, 640, decided in 1954, the plaintiff sued Production Steel Company of Illinois, the owner of the building being constructed, and A. T. Herlin & Son, Inc., the bricklaying sub-contractor who erected and used the scaffold. Plaintiff was an ironworker employed by Abell-Howe & Company, the general contractor, which also did the structural ironwork. The bricklaying sub-contractor was found guilty and the steel company was found not guilty. The sub-contractor appealed. Plaintiff did not file a cross-appeal as to the steel company and the litigation terminated as to it.

The sole issue submitted to the jury was the charge of violation of the Scaffolding Act.

The court said that it was a well-recognized and common custom and practice that workers of one trade used the scaffold of another trade when it was in place and convenient and the practice of ironworkers to climb the outside of scaffolding and this custom was well known to brickworkers. Commenting upon the Scaffolding Act the court said:

"The Scaffolding Act (Pars. 60 and 69, Ch. 48, Ill.Rev.Stat.1953) imposes a statutory liability in cases of willful failure to comply with the Act upon the owner, contractor and subcontractors. The object to the Act is to prevent injuries to persons employed in dangerous and extra-hazardous occupations so that negligence on their part in the manner of doing their work might not prove fatal. For these reasons contributory negligence and assumed risk are not a defense."

The court held there was competent evidence to support the verdict based on the proposition that plaintiff's injury was the proximate result of defendant's wilful violation of the Scaffolding Act.

The latest decision by a state court of Illinois, so far as this court has been able to determine, is Taber v. Defenbaugh, 1956, 9 Ill.App.2d 169, 132 N.E.2d 454, 455 wherein the widow of Thomas Taber sued to recover damages for the loss of his life. The case was tried by the court which allowed defendant's motion for judgment at the close of plaintiff's case.

The single question presented for review was whether the evidence considered in the light most favorable to plaintiff is sufficient to support a finding in her favor.

Defendant was the owner of certain premises on which a dwelling house was being constructed under his supervision and orders. The testimony at the trial was that decedent requested his son-in-law to help him work on the house and he received no pay therefor; one Reagin was employed and paid by the decedent but did take an order as to the doors and windows from defendant; and that defendant did some work in the attic and gave several orders to the deceased concerning some material and plaintiff says that this evidence clearly shows that compliance with the Statute was required of the defendant as the owner, foreman and person having charge of the dwelling house in question. Also that the record clearly shows that no contractor or sub-contractor was involved in the building project.

The court said that the record appears to be conspicuously silent so far as direct evidence is concerned on the question as to whether the decedent was employed by the defendant as a laborer or whether the relationship between him and the defendant was that of owner and contractor.

The court recites the pertinent portions of the Scaffolding Act and then says:

"This Statute requires compliance by an owner, contractor, sub-con-

tractor, foreman or other person having charge of the building project. It is not disputed that defendant was the owner of the premises upon which the house was being constructed, nor that decedent was working on a scaffold at the time he fell. However, before the defendant can be held liable, proof must be made as to all essential elements. One of these elements is that it be shown that the defendant was actually in charge of construction of the building."

and concludes by saying:

"When all of the circumstances shown are considered together there would appear to be no basis therein for the conclusion that the defendant retained the right to control the manner in which the decedent did the work of building defendant's house. The evidence upon which plaintiff relies as proof of an employer and employee relationship, taken in the aspect most favorable to her, fails to even show an actual interference by the defendant with decedent's control or supervision of the construction."

The court in the Taber case, supra, said that before a defendant can be held liable, proof must be made as to all essential elements and that one of these elements is that it be shown that the defendant was actually in charge of construction of the building. The plaintiff in the instant case did not sustain the burden of proof, which was his, that the United States was in charge of the work. This is a necessary element under the Scaffolding Act in order to charge the United States. The purpose of the Scaffolding Act is to hold liable any of the named persons who are in charge of the work. It was not the intention of the legislature that the owner should be liable regardless of who was in charge of the work, but to hold the person in charge of the work responsible regardless of whether it was the owner, contractor, sub-contractor, foreman, or other person having charge of the building project. This can be the only logical conclusion. If the legislature intended otherwise, certainly more appropriate and clearer and less ambiguous language could have been used.

Some of the language used by the Supreme Court of Illinois in the Griffiths case, supra, was not necessary for the decision in that case, and in the opinion of this court was loosely used and is not controlling or binding on this court in the instant case. The holding in that case was that "It is not contrary to public policy that the appellant should contract to pay the damages caused by its own negligence." [310 Ill. 331, 141 N.E. 743]

A judicial opinion must be read as applicable only to the facts involved and is an authority only for what is actually decided. Edlin v. Firemen's Insurance Co., 7 Cir., 225 F.2d 80; Village of Lombard v. Illinois Bell Telephone Co., 405 Ill. 209, 90 N.E.2d 105; Bowman v. Illinois Central Railroad Co., 9 Ill.App. 2d 182, 132 N.E.2d 558.

The courts of the United States are bound to follow the decisions of the highest court of the state in which they sit. The only question in this case is whether the United States of America under the facts and testimony presented, is liable to the plaintiff under and by virtue of the provisions of Sections 60 to 69, both inclusive, Chapter 48, Illinois Revised Statutes, 1955, commonly known as the Scaffolding Act. This precise question presented by the instant case does not appear to have been passed upon by any state court of Illinois. Therefore, it is obligatory upon this court to decide the question involved, in terms of what it thinks the Illinois court would do. The pertinent portions of the Illinois Scaffolding Act applicable to the facts in this case are:

"That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances erected or constructed by any person, firm, or corporation in this State for the use

in the erection, repairing, alteration, removal, or painting of any house, building, bridge, viaduct, or other structure shall be erected and constructed in a safe, suitable, and proper manner and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon * * * (and) any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal, or painting of any building, bridge, viaduct, or other structure within the provisions of this act shall comply with all the terms thereof and * * * for any injury to person or property, occasioned by any wilful violation of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured for any direct damages sustained thereby; * * *."

█ There is no doubt that by the enactment of the above quoted statute the legislature intended, and it has been so construed, that the common law defenses of assumption of risk or contributory negligence are not a defense to any injury coming under the act and that the act was passed in order to provide compensation for injuries caused by failure to comply with the act and in order to provide such compensation for such injuries the legislature in its wisdom provided that the persons therein designated shall be liable for such injury provided that they are in charge of the project. It is noteworthy that in describing the various persons to be liable that they were described in the disjunctive rather than in the conjunctive. The statute says "any owner, contractor, sub-contractor, foreman, or other person having charge of the erection * * *", thereby, in the opinion of the court, wanting to hold liable the person who was in charge of the erection, etc., but in order that there may be no escape from liability as to such injured party, the words "owner,

contractor, sub-contractor, foreman, or other person" are enumerated in the disjunctive. There is no language that says that the owner plus any one of the other enumerated individuals should be liable or that the owner alone should be liable, but it says the owner, contractor, etc. "or" other person and such person, to be liable, should be in charge of the project. There is no Illinois decision in conflict with the above interpretation, and this court holds that the above interpretation is correct and the one to be placed upon the provisions of the Illinois Scaffolding Act above quoted.

The court is of the opinion that the legislature did not intend that the words "having charge of" should be idle words but should control the liability provided for in the Scaffolding Act and place the liability upon the person "having charge of" the erection, etc., be it the owner, contractor, sub-contractor, foreman, or other person. That it did not intend to impose the liability upon the owner to the exclusion of all other considerations as set forth in the Scaffolding Act.

The fact that the United States sent its inspector to the project daily to inspect the work does not place the government "in charge of" the project. The government had no control over the hiring or firing of the workmen. They had no control over the method in which the construction work or the repair work was being done, and they had no control over the firing of the workmen.

Section 10 of the contract between the government and the Krause Construction Company reads as follows:

"Superintendence By Contractor. The Contractor shall give his personal superintendence to the work or have a competent foreman or superintendent, satisfactory to the Contracting Officer, on the work at all times during progress, with authority to act for him."

And Section 11 provides:

"Permits and Responsibility for Work, Etc. The Contractor shall, without additional expense to the

Government, obtain all licenses and permits required for the prosecution of the work. He shall be responsible for all damages to persons or property that occur as a result of his fault or negligence in connection with the prosecution of the work. He shall also be responsible for all materials delivered and work performed until completion and final acceptance, except for any completed unit thereof which theretofore may have been finally accepted."

Inspection by the ordinary meaning of that word could not mean "in charge of." The common accepted meaning of the word "inspection" is examination or testing.

The United States of America was not in charge of the project on which the plaintiff was injured while working at Scott Air Force Base. The Loren "Mike" Krause Construction Company was in charge. The United States of America, as owner of the premises, is not liable to the plaintiff and in a properly pleaded case the Loren "Mike" Krause Construction Company may be liable to the plaintiff but under the pleadings as found in this case the Loren "Mike" Krause Construction Company, being Third Party Defendant, is not liable unless the United States of America, the defendant in the original suit, is liable and in view of the fact that this court is holding the United States of America not liable, it must necessarily follow that the Loren "Mike" Krause Construction Company is not liable.

The court concludes that the plaintiff has failed to prove an essential element in this case, namely, that the United States was actually in charge of the project so as to bring himself within the provisions of the Scaffolding Act; that by reason thereof the case against the United States of America should be dismissed and as a consequence of the dismissal against the United States of America that there is no liability on the part of the Third Party Defendant, the Loren "Mike" Krause Construction Company. It is so ordered.