**Von Lee Melvin, Plaintiff-Appellant, v. George R. Thompson, and Helyn Thompson, Defendants-Appellees.**

Gen. No. 48,899.

First District, First Division.

February 18, 1963.

Richard J. Billik, of Chicago (Louis A. Rosenthal, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Oswell G. Treadway, of counsel), for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

Plaintiff appeals from a summary judgment, entered for defendants, in his suit under the Structural Work Act (Ill Rev Stats 1959, c 48, §§ 60–69), commonly referred to as the Scaffold Act. Recovery was sought for injuries sustained by plaintiff on August 30, 1960, when he fell from a scaffold while painting a sign on a building owned by defendants.

Defendant George R. Thompson is a mortician. His mortuary was located in a three-story building owned by Thompson and his wife, the other defendant. Shortly before August 30, 1960, Thompson orally engaged Jesse Stringer to retrace the mortuary signs on the east and west walls of the building. Stringer had painted the original signs some years before. About two days before the occurrence, William Woodward came to the mortuary to arrange for doing the work. He told Thompson that he was Stringer's partner and that Stringer was in the hospital. On the evening of August 29, 1960, Woodward and plaintiff rigged a scaffold belonging to Stringer on the east wall of defendants' building, and the next morning they commenced work. Plaintiff fell from the scaffold about 9:30 a. m.

After answering the complaint, defendants moved for summary judgment, attaching as exhibits to their motion the discovery depositions of plaintiff and of defendant George R. Thompson. Plaintiff filed the counteraffivadit of William Woodward in opposition to the motion. On the issues thus presented, the trial court granted defendants' motion, holding that there was no genuine issue as to any material fact and that defendants were entitled to judgment as a matter of law.

■ Before civil liability may be imposed on these defendant owners under the Scaffold Act, it must appear that they "had charge" of the painting operations involved in the violation. (Gannon v. Chicago, M. St. P. & Pac. Ry. Co., 22 Ill2d 305, 323, 175 NE2d 785 (1960).) If the pleadings, depositions of plaintiff and defendant George R. Thompson, and the counteraffidavit of William Woodward show that there is no genuine issue as to the material fact that the defendant owners were not in charge of the painting work during the performance of which plaintiff was injured, the summary judgment should be affirmed.

Plaintiff relies principally on Woodward's counter-affidavit, which shows that: Thompson informed Woodward that he was dissatisfied with the prior painting job and intended to "watch this job extra carefully" and if he "was not satisfied with the workmanship or quality of work as the same progressed, he would stop the painting immediately and no payment would be made"; Thompson went into detail with respect to what was to be done, the type of paint to be used, the time at which the work was to be commenced; on the evening of August 29, 1960, Thompson furnished Woodward with a ladder to gain access to the roof from which the scaffolding was then hung; Thompson inspected the paint which was to be used, examined the scaffolding rope, and told Woodward that it did not appear to be very sturdy; Thompson jerked the rope violently to test its strength, and then stated, "I guess it is all right, it looks as if it will hold"; while the work was in progress, Thompson instructed Woodward to move in various directions and to scrape off most of the old paint, and pointed out to Woodward various locations where insufficient paint was being used; Thompson said that the paint appeared to be too thick and instructed that it be thinned out; after plaintiff's fall, Thompson instructed Woodward to clean up the debris.

Plaintiff's deposition shows that: he and Woodward rigged the scaffold, which came from Stringer's truck the evening before the accident; they tested the scaffold, pulled it up close to the top of the wall, and then left it hanging there overnight; plaintiff was familiar with rigging scaffolds of this type; the following morning, plaintiff and Woodward mounted the scaffold and proceeded to work; while they were painting, the scaffold began "cracking and popping" and Woodward hollered "hit it, grab ahold of something"; Woodward succeeded in grabbing a safety rope, but

416

plaintiff failed to do so; the scaffold broke and plaintiff fell some forty feet to the pavement below, being severely injured.

Plaintiff further testified in his deposition that he had no conversation with defendants, knew nothing about the painting contract, and did not know what Thompson looked like; he stated that while he and Woodward were painting, a man "came out" and told them to "be sure and scrape it good." This was the only thing he heard anyone say concerning the painting job.

The answers of the defendants admit ownership of the building and contracting for painting of the signs. They deny any duty to plaintiff and allege that defendants did not "have charge" of the painting work. In his deposition, defendant Thompson admits telling the painters to "do a good job. . . . I did not give Woodward any instructions other than to do a good job. I did not suggest any choice of paints. He was just to redo the existing sign." Thompson testified that he owned no sign painting equipment. He further said, "I had nothing to do with the job at all, other than the contract. He was to do the job, the sign, and retrace it as he formerly did, and I was to pay him."

It is not disputed that Woodward was an independent contractor and that plaintiff was his employee. Nor is it disputed that the scaffold and rigging and all painting equipment belonged to Stringer, the person with whom defendants had initially contracted. Defendants had no control over the hiring or firing of plaintiff. Plaintiff was not a party to the contract and defendants were not required to pay him his wages.

■ At most, the activities of defendant Thompson can be considered as an effort to require compliance with the contract and to ensure that the qual-

ity of work done was as agreed; he inspected the painting as it progressed and threatened to terminate the work if the job was not being done satisfactorily. In so doing, he could not be considered by reasonable men to have been "in charge" of the work, as required for owner-liability under the terms of the Scaffold Act. We therefore conclude that, taken in the aspect most favorable to plaintiff, the pleadings, depositions, and counteraffidavit do not raise a genuine factual issue with respect to control by defendants of the painting operation. It follows that summary judgment for defendants was proper.

██ We find no merit in plaintiff's contention that the trial court erred in denying his motion to file an amended counteraffidavit, an amendment to the complaint, and to vacate the summary judgment. Plaintiff admits that the proposed amended counteraffidavit is "the same in substance" as Woodward's affidavit which already appears in the record. The proposed amendment to the complaint would merely allege that defendant Thompson was "in charge" of the painting job without alleging any additional facts to justify this conclusion. Even if so amended, plaintiff's complaint would not state a good cause of action here. While we believe that discretion should be liberally exercised in favor of allowing such new pleadings as are essential to the presentation of a party's cause of action or defense (Martin v. Kozjak, 5 Ill App2d 390, 393, 125 NE2d 690 (1955)), we also recognize that justice is not served by the fruitless expenditure of time and effort by our courts, their officers, and litigants.

For the reasons given, we conclude that the summary judgment in favor of defendants should be affirmed.

Affirmed.

BURMAN, P. J. and ENGLISH, J., concur.