Bruno G. Kobus, Plaintiff-Appellant, v. The Formfit Co., a Corporation, Defendant-Appellee.

Gen. Nos. 49,461, 49,526.

First District, First Division.

March 1, 1965.

Norman Peters and John G. Phillips, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (John L. Kirkland and D. Kendall Griffith, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Plaintiff, Bruno Kobus, appeals from the entry of summary judgment in favor of defendant, the Formfit Company, in his action to recover damages for personal injuries allegedly occasioned by a wilful violation of the Illinois Structural Work Act (Ill Rev Stats 1961, c 48, §§ 60–69), commonly referred to as the Scaffold Act.

The original complaint joined as defendant the Formfit Company, owner of the premises where the construction work and alleged injuries took place, C. W. Johnson, a heating contractor, and Roberts-Lang-Gray, Inc., a mason contractor. Summary judgments were entered for the contractors and no appeal was taken from those orders.

Plaintiff's amended complaint alleged that on August 10, 1959, defendant was the owner of certain premises located at 5150 W. Roosevelt Road in Chicago, and was in the process of erecting and constructing an addition to the building located there; that defendant "acting as its own general contractor, did hire and engage certain contractors and subcontractors to perform the work under the direction and control of defendant; that plaintiff, a sheet metal worker, was employed by Airway Heating & Ventilating Systems, Inc., the contractor engaged in installing the heating system in the building; and that plaintiff, while engaged in installing air ducts was required to make use

of a scaffold from which he fell and sustained severe injuries."

It was further alleged that defendant, while in control of the work and the premises through its agents, wilfully committed one or more of the following violations of section 60 of the Structural Work Act, directly and proximately causing the injuries complained of: (a) failed to provide proper safeguards and other protection in and around the scaffold; (b) failed to provide plaintiff with safe supports for the scaffold; (c) failed to erect and construct the scaffold in a safe, suitable and proper manner; (d) permitted the scaffold to be in use while not constructed in a safe manner, and while it did not give proper and adequate protection to the life and limb of plaintiff; and (e) failed to provide guards or rails in and around the scaffold.

Defendant's answer to the amended complaint admitted that it was the owner of the premises but denied inter alia that it was "acting as its own general contractor," or that "it was in control of any work being performed on the premises."

In its amended motion for summary judgment defendant alleged in substance that plaintiff was an employee of Airway, one of the contractors performing construction work on the building addition to its factory; that it did not furnish or provide Airway with any material or supplies to be used in the performance of their contract; that it did not furnish any ladders or scaffolds for use by Airway or any other contractor on the premises; that it did not furnish any superintendents or supervisory employees to work with Airway in the performance of the contract; and that the scaffold from which plaintiff allegedly fell was owned and erected at the jobsite by Airway employees,

451

who were under the supervision and followed the instructions of George Ulbrick, an employee of Airway.

The affidavit of R. E. Foster, assistant manager of operations of Formfit, filed in support of defendant's motion for summary judgment, was in substantial agreement with the averments of the motion. In further support of the contention that it was not in charge of the work, defendant attached to its motion the discovery depositions of George Ulbrick, a foreman, and Frank Ulbrick, a superintendent of Airway. In opposition to the motion, plaintiff filed the discovery deposition of Sidney C. Finck, the architect employed by defendant.

George Ulbrick, in his deposition, after describing the type of scaffold which was one usually used by sheet metal men, testified that the scaffolding was owned and erected by Airway; that the employees of Airway received no instructions from the defendant regarding the scaffold or how to put up the ventilating, and that defendant did not furnish Airway with any materials or supplies. Frank Ulbrick testified in his deposition that plaintiff was under the control of the Airway foreman.

In substance, the discovery deposition of Sidney C. Finck, submitted by plaintiff in opposition to the motion for summary judgment, indicated that he prepared the plans and specifications, took bids, and discussed the contracts with the owner, and then contracts were prepared between the owner and the contractors, and "we observed the construction until it was completed." Continuing, he testified that periodic inspections were made at the work site either by him or someone from his office, two or three times a week, for a half to two hours at a time.

He denied that he had ever had occasion to give any directions to the foreman or anyone working in the

area, but that dissatisfaction with the work done would be reported directly to the contractor. He did not remember finding the quality of any of the work done to be lacking. Periodic construction reports were prepared by him and contractors would sometimes assemble in his office and would be informed when "to take care of their portion of the work, to fit in with each other."

The American Institute of Architects short form for construction contracts used by defendant and Airway was introduced into evidence. By its terms Airway was described therein as the contractor, and Formfit as owner. The contractor undertook to furnish labor and materials and perform work for ventilation as shown on drawings and specifications prepared by Sidney C. Finck, architect. Progress payments were to be made only on certificates signed by the architect for "satisfactory progress of the work."

Among the general provisions of the contract there appears the following: the contractor shall permit and facilitate the inspection of work by the owner and his agents and public authorities at all times; the owner may order changes in the work, the contract sum being adjusted accordingly; the contractor shall re-execute any work that fails to conform to the requirements of the contract appearing during the process of the work; the owner has the right to let other contracts in connection with the work; the architect shall have general supervision of the work, and is authorized to stop the work if necessary to insure its proper execution, and shall certify to the owner when payments under the contract are due and the amounts to be paid.

On the basis of the pleadings, depositions and affidavits filed, the trial court granted defendant's motion for summary judgment. In urging reversal, plaintiff's theory on appeal is that "an owner is 'in charge

453

of' the work being performed within the meaning of section 9 of the Scaffold Act, where the owner acts as its own general contractor, engages an architect to select the various contractors, maintains liaison with said contractors through the said architect who, on behalf of the owner, coordinates the work being done, receives progress reports, reserves the right to make alterations or corrections in the work, and reserves other powers of supervision." Plaintiff further suggests that as the other contractors involved in the construction have already been dismissed, affirmance of the judgment below would result in the anomalous situation of a sizeable construction project with no one in overall charge.

Defendant contends that the affidavits and depositions filed in support of and in opposition to its motion for summary judgment create no triable issue of fact on the question of defendant's having charge of the work involving an alleged violation of the Scaffold Act.

Inasmuch as the controlling facts in this case are not in dispute, and the controversy is over the proper interpretation of the Scaffold Act, the question presented for decision is essentially one of law. The relevant portions of the statute involved in this litigation provide:

§ 1. . . . all scaffolds, hoists, cranes, stays, ladders, . . . erected . . . by any person, firm or corporation in this State for use in the erection, repairing, alteration, removal or painting of any . . . building . . . shall be erected and constructed in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon. . . .

. . . . . .

§ 9. Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building . . . or other structure within the provisions of this act, shall comply with all the terms thereof, and any such owner, contractor, sub-contractor, foreman or other person violating any of the provisions of this act shall upon conviction thereof be fined not less than $25, nor more than $500 or imprisoned for not less than three months nor more than two years or both fined and imprisoned in the discretion of the court. . . . For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby.

The scope and extent of an owner's liability under the Act has been the subject of controversy since the first decided case, Claffy v. Chicago Dock & Canal Co., 249 Ill 210, 94 NE 551 (1911). "Although the statute was originally enacted in 1907, and amended slightly only once, problems arising from litigation in Illinois have only recently been of major consequence." Strodel, Illinois Scaffold Act Liability, 50 IBJ 1092 (1962).

The recent Supreme Court decision of Gannon v. Chicago, M., St. P. & P. R. Co., 22 Ill2d 305, 175 NE2d 785 (1961), cited by both parties in support of their position, is perforce determinative of the issues presented here. That decision, however, left the phrase "having charge of" as found in section 9 open to further judicial inquiry and consideration. In order to properly determine the implications of Gannon as they relate to the instant litigation, we think it neces-

sary to first briefly sketch some of the authorities upon which it is based.

In Claffy, which purported only to construe section 7 of the Act, relating to the duty of owners or contractors to enclose shafts for elevating machines or hoisting apparatus, the court after stating that the duty to comply with section 7 is imposed upon both the owner and contractor, held the owner liable on the basis that the evidence indicated that it retained control and supervision over the premises involved. In the subsequent cases of Mindrop v. Gage, 189 Ill App 599 (1915) and Breton v. Levinson, 207 Ill App 406 (1918) section 9 was interpreted as imposing civil liability only upon an owner "having charge of" the erection of the structure. The court in both cases distinguished Claffy in that the quoted language did not modify "owner" in section 7, as it does in section 9, and that the evidence there indicated the owner had not parted with control over the premises.

Then, in John Griffiths & Son Co. v. National Fireproofing Co., 310 Ill 331, 141 NE 739 (1923), the validity of an agreement whereby a subcontractor agreed to indemnify the principal contractor against any liability for injury caused by the subcontractor's negligence was sustained as not being contrary to public policy of prohibiting indemnification against illegal acts. The court announced at page 335 in language later rejected as nonessential and gratuitous, that

> The act of 1907 imposes upon the contractor and the owner, as well as upon sub-contractors, foremen or others engaged in the work, the duty of complying with the provisions of the act so far as the civil liability is concerned. (Claffy v. Chicago Dock Co., 249 Ill 210.) . . . Since the enactment of this law the owner of the property and every contractor and sub-contractor are equally bound by

456

the act to comply with its provisions, and in case of willful (sic) failure are liable to the party injured for any direct damages sustained by reason of such failure.

Without discussing the above authorities the court in Taber v. Defenbaugh, 9 Ill App2d 169, 132 NE2d 454 (1956) denied relief to a widow on the basis that the evidence, having failed to establish whether the decedent was a laborer or an independent contractor employed by defendant, thus failed to place the owner "in charge of" the construction of the building.

In Schmid v. United States, 154 F Supp 81 (1957), plaintiff, a carpenter employed by an independent contractor was denied recovery in his suit against the government for injuries sustained in a fall from a scaffold erected by the contractor. The district court, after interpreting Claffey as predicating liability only on an owner who retains control of the premises, and finding the above quoted language in Griffiths unnecessary to the decision, went on to read section 9 as imposing liability for injuries caused by failure to comply with the Act in the disjunctive, and that the words "having charge of" were not used by the legislature with the intention that they be idle, but to impose liability only on those persons enumerated who were actually "in charge of" the project. The court further held that daily inspection of the project by the government was not sufficient to place it "in charge of" the work, and that the evidence failed to show the essential elements found necessary to create liability because "(T)he government had no control over the hiring or firing of the workmen. They had no control over the method in which the construction work or repair work was being done, . . .".

While motion for new trial in the Schmid case was pending our Supreme Court decided the case of Ken-

nerly v. Shell Oil Co., 13 Ill2d 431, 150 NE2d 134 (1958). That case involved an action by an employee of an independent contractor against the owner of the property under construction. The scaffold was built by other employees of the contractor in the course of certain construction work. After rejecting the contention that the statute imposed liability only upon persons having charge of the work, the court noted that the "Scaffold Act deals with highly dangerous activities. It has been regarded from the outset as intended to fix an independent, nondelegable duty of compliance upon the owner of the property and upon each contractor and subcontractor engaged in the work." Thus, relying on Claffy and Griffiths, the court held the owner liable irrespective of whether he was "in charge of" the work performed, and that as to the duties imposed upon the owner and the contractor, "each is independent of the duty of the other, and neither can escape his statutory liability by pointing to the other's breach of duty."

In its opinion, and in reliance on the case of Schultz v. Henry Ericsson Co., 182 Ill App 487, aff'd 264 Ill 156, 106 NE 236 (1913), the court construed the term "wilful violation" to mean knowing violation, so that an owner is liable where the dangerous condition is known to him or when, in the exercise of reasonable care, the existence of the dangerous condition could have been known to him.

Subsequent cases applying the Kennerly decision have held that control of the structural activities is not a relevant factor (Pankey v. Hiram Walker & Sons, Inc., 167 F Supp 609 (1958)), and that the effect of the act was to impose an absolute, and independent, nondelegable duty of compliance beyond the doctrine of respondeat superior, and irrespective of whether control has been given to an independent contractor.

458

In Braden v. Shell Oil Co., 24 Ill App2d 252, 164 NE 2d 235 (1960), the owner was held to be in charge of the work even though it, in fact, gave complete charge and control of the premises to an independent contractor. In Bounougias v. Republic Steel Corp., 277 F2d 726 (7th Cir 1960), the court stated that Kennerly, contrary to the Schmid case, interpreted section 9 in the conjunctive, so as to impose liability on the owner as well as on the other designated persons. And in Schmid v. United States, 273 F2d 172 (7th Cir 1959), the court, after noting that "while the government retained general supervision of the construction project, it reserved no degree of control over the details of performance of the Construction Company under the contract," held that as owner, the government knew that the scaffolds were being used, and it could not escape the mandatory duty that the statute imposes by closing its eyes to their condition. See also, Moroni v. Intrusion-Prepakt, Inc., 24 Ill App2d 534, 165 NE2d 346 (1960).

In contrast to Kennerly, the Appellate Court in Gannon v. Chicago, M., St. P. & P. Ry. Co., 25 Ill App2d 272, 167 NE2d 5 (1960) held, on facts identical to those in Kennerly, that plaintiff, an employee of an independent contractor engaged by defendant-owner to erect a dock on its premises, where the scaffold and the erection of the dock was under the contractor's control, could not recover from the owner because the owner was not "in charge of" the work.

In reviewing the Appellate Court decision our Supreme Court reconsidered the interpretation it had given to the Act in Kennerly, and concluded that the phrase "having charge of" modified "owner" as well as others enumerated and that only owners in charge of the work could be held liable for a wilful or knowing violation, which "in the nature of things . . . can be perpetrated only by persons directly connected

with the operations, and not by virtue of mere owner-ship of the premises." In rejecting the ratio decedendi of the Kennerly decision, as well as the cases upon which it was based, Claffy, Griffiths, and Schultz, the Supreme Court followed the reasoning suggested in the earlier Schmid case, as representing the better statement of the law, and quoted from that decision at page 88:

> It was not the intention of the legislature that the owner should be liable regardless of who was in charge of the work, but to hold the person in charge of the work responsible regardless of whether it was the owner, contractor, sub-contractor, foreman or other person having charge of the building project. This can be the only logical conclusion. If the legislature intended otherwise, certainly more appropriate and clearer and less ambiguous language could have been used.

As we read the Gannon decision, it did more than merely modify a technical reading of the Scaffold Act. The approach suggested by that opinion under-mined the very basis upon which the Kennerly de-cision was predicated. The statutory purpose enun-ciated in the Schultz case, of preventing injuries to persons employed in a dangerous and extra hazardous occupation, was adopted in Gannon to the extent that the doctrines of assumed risk and contributory negli-gence were to have no application to the Act, but the court rejected the liability-without-fault concept in-corporated into the Act in Kennerly by reinstating the common law defense of independent contractor. Thus, by requiring liability to be imposed for a violation of section 1 of the Act only on those enumerated who had charge of the work, "wilful" was read to mean knowing to the extent that knowledge of the dangerous con-dition of the scaffold can be imputed only to those

460

who are in control and supervision of the work, and not merely on the basis that the owner knew that scaffolds were to be used.

While the Supreme Court did hold in Gannon that under the circumstances presented "it was at most a disputed question of fact whether the owner could be deemed to be in charge of the construction within the meaning of the Act," the order of the Appellate Court remanding the cause for new trial was reinstated by it, pursuant to section 92(1)(e) of the Civil Practice Act, because of the "possible hardship upon plaintiff in proceeding with this litigation, apparently in reliance upon the Kennerly case and the unqualified dictum in the earlier Gannon case." As stated recently in Tankersley v. Peabody Coal Co., 31 Ill2d 496, 505, 202 NE2d 498 (1964), "where a case is tried on an erroneous or mistaken theory of law the judgment should be reversed and the case sent back for a new trial. Iroquois Furnace Co. v. Wilkin Mfg. Co. 181 Ill 582." Thus, resubmission of the cause for new trial for the purpose of achieving substantial justice between the parties, indicates that Gannon cannot be considered as controlling the question of the legal sufficiency of the evidence.

Subsequent decisions based on Gannon have imposed liability where the circumstances indicated that the owner or subcontractor was directly responsible for erecting or furnishing the scaffold, or had failed to part with control over the construction project. Thus, as the Supreme Court stated, the Act as interpreted still provides a very real remedy.

In Lawler v. Pepper Const. Co., 33 Ill App2d 188, 178 NE2d 687 (1961) the defendant-subcontractor constructed the scaffold from which plaintiff, an employee of another contractor, was caused to fall. In Miller v. B. F. Goodrich, 295 F2d 667 (7th Cir 1961), the defendant-owner demanded that it be permitted to

461

furnish supervisory personnel on the painting job, and one of its employees acted as foreman of the painting crew, instructing them on the manner in which the work was to be performed. In Oldham v. Kubinski, 37 Ill App2d 65, 185 NE2d 270 (1962), the defendant-contractor had undertaken by contract to furnish all equipment and operators. Plaintiff, an employee of a subcontractor, fell from a loader shovel, held to be a part of the scaffolding, which had been supplied by defendant, and which was operated by one of defendant's employees. In Yankey v. Oscar Bohlin & Son, Inc., 37 Ill App2d 457, 186 NE2d 57 (1961), the prime contractor supplied a job superintendent, and its employee directed the operation of a crane, the malfunction of which caused the injury. And in Skinner v. United States, 209 F Supp 424 (1962) the government exclusively retained, and in fact, controlled the operation of a hangar door, part of the scaffold against which plaintiff, a painter employed by an independent contractor rested his ladder, and from which he fell when a government employee caused the hangar door to move.

On the other hand, Gannon has been uniformly interpreted to mean that where the owner exercised neither control over the scaffolds and ladders used in the work on its premises, nor over the manner in which the work was done, he could not be deemed to have charge of the work. Loveless v. American Tel. & Tel. Co., 40 Ill App2d 347, 189 NE2d 679 (1963); Melvin v. Thompson, 39 Ill App2d 413, 188 NE2d 497 (1963); Cannon v. United States, 328 F2d 763 (7th Cir 1963); Rovekamp v. Central Const. Co., 45 Ill App 2d 441, 195 NE2d 756 (1964).

In Loveless, as in Gannon and the instant case, there were engineering and architectural plans for the work, and frequent inspections of the work by defendant. The contract between the owner and contractor pro-

vided that the contractor would have full control and direction over the mode and manner of doing the work. The owner had the right to inspect all work done and material furnished under the contract, and could condemn or reject any or all work or materials if, in the opinion of an inspector or engineer of the owner, the same was not in accordance with the drawings and specifications. Testimony of the contractor, his foreman, and supervising engineer for defendant was to the effect that the contractor had sole charge of the construction and the owner's engineers or inspectors had no control or supervision over the method or means of construction. Furthermore, if an inspector or engineer of the owner saw or observed a violation of a statutory requirement he could, through proper channels, have the job closed until the statutory duty was complied with, and if a representative of the owner had observed a scaffold which he believed was not being constructed properly or had any question about, he could discuss the matter with the superintendent of the contractor. He, however, did not have any authority over the men of the contractor to change the way they were building it.

In affirming the granting of judgment notwithstanding the verdict for the defendant-owner in a suit brought by a carpenter employed by the independent contractor, the court concluded from the evidence, and the import of the Gannon decision, that "(T)he mere fact that the defendant might, through notice or otherwise, call attention to and correct a violation of the law, does not, of itself, involve any degree of control or supervision." It is clear that insofar as the owner did not control or reserve the right to control the work being done by the independent contractor, the owner was not held to be in charge of the work involving a wilful violation of the statute.

Likewise, in affirming summary judgment entered for a defendant-owner who had hired a commercial painter, this court, in Melvin v. Thompson, 39 Ill App2d 413, 188 NE2d 497, held that the right of an owner "to require compliance with a contract and to insure the quality of work done was as agreed . . . could not be considered by reasonable men to have been 'in charge of' the work, as required for owner liability under the terms of the Scaffold Act."

And, in Cannon v. United States, 328 F2d 763 (1963), an employee of an independent painting contractor brought suit against the government for injuries sustained in a fall from a scaffold erected by his employer. To avoid the thrust of Gannon, plaintiff relied upon the contract between the government and the contractor, whereby the work would be conducted under the general direction of the contracting officer and was subject to inspection, and that the contracting officer could require the contractor to remove incompetent, careless or insubordinate employees in urging that the government, as owner, had reserved the right to control and supervise the work.

In rejecting this argument, substantially similar in nature to that urged by plaintiff here, that court interpreted Gannon as requiring much the same evidence as had the courts in the earlier Schmid and Taber cases, namely, that the government control the method in which the work was carried on, and the hiring and firing of the contractor's workmen. Having found these essential elements wanting, and inspection of the work not controlling, the owner was held not to be in charge of the work.

The decision in the recent case of Palier v. Dreis & Krump Mfg. Co., 47 Ill App2d 334, 198 NE2d 521 (1964), though relied upon by plaintiff here, is in agreement with the foregoing reading of the statute. There, in reversing a summary judgment entered in

464

favor of the defendant-owner, the court relied upon the deposition of Byrnes, a licensed contractor, and assistant to defendant's president, in which he stated that he supervised the construction, and that the contractor's steward "had to take orders from him if he wanted things done in a certain way and that while he did not order any changes on the job, it was because the job was running smoothly. He had full authority to order any changes that he may have wanted." The question of control and supervision of the work having been raised by the fact that the contractor's steward took his orders as to how the work was to be done from the owner's agent, the court properly reversed the cause for trial.

Before turning our attention to the instant cause, we think it necessary in considering the overall impact of the Gannon decision to focus our attention upon an ancillary matter, not presented for decision here, recently discussed in Rovekamp v. Central Const. Co., 45 Ill App2d 441, 195 NE2d 756 (1964), where it was held that in an action brought under the Scaffold Act, the rule forbidding contribution between tort-feasors would not be applicable where one is an active and primary wrongdoer and the other bears but a passive or secondary relationship to the cause of injury.

The question squarely presented and decided was whether the Gannon decision had changed the rule enunciated in Moroni v. Intrusion-Prepakt, Inc., 24 Ill App2d 534, 165 NE2d 346, decided at a time when Kennerly represented the prevailing law, which involved an appeal from an order dismissing a third party complaint filed by the owner against the contractor who erected the scaffold from which plaintiff, his employee, fell and was injured.

The court in Rovekamp, though following the Moroni decision, recognized the seeming dilemma "more formidable in appearance than . . . in substance" of

465

whether a defendant, found to be liable under the Gannon rationale for having been in charge of the work, and thus having committed a wilful or knowing violation of the statute, could nevertheless obtain indemnity. As the court stated: "How can there be degrees of fault—active or passive fault between parties who are wilful?" And particularly where the wrongdoers by the Act would be in pari delicto.

In disposing of the argument thusly presented, that court at page 449 concluded:

> Who is more culpable, a party who supervises and coordinates the overall project, or a party who is responsible for the scaffolding and the particular work which produced the injury? Both are in charge of the work, to be sure, but of different phases of the work. Neither can escape liability to the plaintiff—thus the purpose of the Act is accomplished—but the lesser delinquent, if held accountable by the plaintiff can transfer its statutory liability to the active delinquent, whose dereliction from duty brought about plaintiff's injury.

Unlike Rovekamp, the question presented by this appeal is whether the owner was a wrongdoer at all. Keeping in mind that the Gannon decision abrogated the liability-without-fault concept existing prior thereto, whether an owner or other person enumerated in section 9 is to be held responsible for erecting scaffolding in a "safe, suitable and proper manner" depends upon whether he had charge of the work involving the violation, and the fact that the owner knew that scaffolds would be used on the project does not obligate him to see that they are constructed in a safe manner.

■ Thus, to hold liable an owner "having charge of" the work for a wilful or knowing violation of the

terms of the Act, it must be demonstrated that he controlled and supervised the manner and method in which the work was being done. Turning our attention to the facts presented by the record before us, we find them much the same as introduced, but found insufficient in Loveless, Cannon, and the earlier Schmid case, to establish the essential element that the owner was in charge of the work. Plaintiff's theory, though phrased differently, is in substance identical to those previously rejected, and is therefore, similarly treated here.

█ It is admitted that the Airway employees received their instructions as to how the work was to be done from their foreman. The conduct of the architect in inspecting the work as it progressed was an extension of the rights retained by the owner through the various clauses in the contract with Airway, the sole purpose of which was to permit the owner to ascertain whether the quality of the work being done was in substantial compliance with the plans and specifications called for by the contract. Such conduct on the part of the owner and his agent, standing alone, cannot reasonably be deemed to have placed the defendant "in charge of" the work, within the meaning of the Act.

█ Plaintiff, nevertheless, contends that someone must be in charge of the overall project, and that it can be reasonably inferred from the evidence that the only person who could have and did coordinate the entire project is the owner who, for purposes of the construction work, became the general contractor. To construe the statute as plaintiff suggests would mean that every owner, regardless of his connection with the work would be subject to civil liability by virtue of mere ownership. An argument based on such a non-delegable theory has no basis in the statute and, as the Gannon decision indicated, distorts the purpose of the

Act "in order to insure double remedy, and authorize by indirection what the Workmen's Compensation Act prohibits by a direct action" and is, therefore, rejected here.

We do not believe that the result obtained by the foregoing analysis leads to a false or mechanical rule by which conduct in relation to the duties imposed by the Act is measured, nor does it deny plaintiff the right to have issues of fact presented to the jury for their determination. It should be kept in mind that evidence must always be viewed in relation to its legal sufficiency as determined by appropriate judicial investigation. Here, there is no evidence, taken in a light most favorable to plaintiff, which indicates that defendant either controlled the manner or method in which the work involving the violation was to be done, or received the right to do so.

For the foregoing reasons, we hold that there is presented here no genuine issue of fact as to defendant's "having charge of" the work involving an alleged "wilful" violation of the Scaffold Act and, therefore, the order of the trial court entering summary judgment for defendant is hereby affirmed.

Affirmed.

MURPHY, J., concurs.

BURMAN, P. J., dissenting:
I am of the opinion that this action should not have been determined by summary judgment since the record clearly presents a genuine issue of material fact for a jury as to whether the defendant was "in charge of" the work under the provisions of the Scaffold Act and under Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785, and the subsequent cases.

I do not believe that Gannon and the cases decided since Gannon require the narrow construction of the Scaffold Act adopted by the majority, that is that an owner-contractor has no duty with respect to scaffolds unless he actually supplies or erects them and in fact controls "the manner or method in which the work involving the violation was to be done." Gannon itself only held that the legislature intended to impose liability for wilful violation of the statute on those who are in charge of the work, but that case did not define "in charge of." Moreover, if the defendants in Gannon could only have incurred liability if they erected the scaffold or controlled the manner or method of the specific work involved, there could have been no point in remanding the case for a new trial.

Nor did the subsequent interpreting cases adopt such a narrow view of the act. In Loveless v. American Tel. and Tel. Co., 40 Ill App2d 347, 189 NE2d 679, the owner was not charged as being the contractor nor was the case determined by summary judgment. The court there simply held that in the absence of evidence that the owner at any time had charge of the construction involving violation of the Scaffold Act, the mere fact that the owner might "through notice or otherwise, call attention to and correct a violation of the law, does not, of itself, involve any degree of control or supervision." (40 Ill App2d at 351.) Cannon v. United States, 328 F2d 763, likewise did not involve a summary judgment nor was the government-owner charged to be the contractor. The court held that the fact that the owner "had an inspector who, from time to time, inspected the various painting jobs on the Depot, did not place the United States 'in charge of' the painting work." (328 F2d at 765.) In Palier v. Dreis & Krump Mfg. Co., 47 Ill App2d 334, 198 NE2d 521, the court reversed a summary judgment because the deposition of the assistant to the defendant's

president, to the effect that he had authority to order any changes in the work, raised a disputed question of fact that the defendant was in charge of. The court so held although there was no showing that the defendant either supplied or constructed the scaffold.

In my opinion, if the Scaffold Act were to receive the narrow construction adopted by the majority, instead of a more liberal construction, then the Act will be stripped of its reason and purpose in a significant class of cases. Where a workman is injured on a scaffold which was erected by his employer, he would have no Scaffold Act remedy against the owner or anyone other than his employer because under the holding of the majority, those parties were not in control of the work since they did not supply or construct the scaffold. The only action possible against these parties would be a common-law negligence action in which, unlike actions under the Scaffold Act, the defenses of assumption of risk and contributory negligence are applicable. As against his employer, the one person who is in control of the work because he constructed the scaffold, the workman, generally has only a claim for compensation under the Workmen's Compensation Act which is his sole and exclusive remedy. He then has no action against others who may have been in charge of the work and wilfully violated the Act. I do not believe that when the legislature passed the Workmen's Compensation Act it intended thereby to nullify the extra safeguards which the Scaffold Act was intended to give for this hazardous occupation.

Furthermore I believe that the pleadings, the affidavit and the depositions in the instant case disclose a question of fact for the jury and that it was therefore improper to grant summary judgment. The purpose of summary judgment is to permit the court to determine only if there is any genuine issue of fact, not to permit it to try issues of fact. Kruse v. Stream-

wood Utilities Corp., 34 Ill App2d 100, 180 NE2d 731. On the record in the Gannon case, the court found that it was a question of fact for the jury whether the owner had charge of the work. In the case at bar the plaintiff alleged that the defendant, as the owner of the involved premises, was in the process of erecting and constructing an addition to its property and that *the defendant was acting as its own general contractor and that the contractors and subcontractors were under the direction and control of the defendant*. In its answer the defendant admitted to being the owner of the premises, but denied that it was acting as its own general contractor or that it was in control of any work performed on the premises. The deposition of the defendant's architect shows that he not only prepared the plans, drawings and specifications, but that he regularly reported to the defendant and selected and hired the contractors. He admitted that there was no overall supervisor on the job other than himself. He stated that he was on the project regularly, either personally or through someone in his office. He distributed to each contractor on the job his portion of the work schedule and he fitted each contractor's work in with the others. Of special importance is the fact that the defendant's contract with the subcontractor, "Airway," provided that "the architect shall have general supervision of the work."

The act of summarily disposing of the issue as to whether the defendant was in charge of the work solely on the basis of the pleadings, an affidavit and several dispositions does violence to the right of trial by jury. Even if the evidence adduced by the dispositions were the only testimony offered by the parties, which we have no right to conjecture, still whether the defendant was in charge of the work would be a question of fact for the jury.

For all of the foregoing reasons, I think that it was error to grant summary judgment for the defendant. The cause should be reversed and reinstated for trial on the merits.